**Neuman Fier, Appellee, v. Chicago Orpheum Company, Appellant.**

**Gen. No. 39,599.**

Opinion filed May 3, 1938.

WINSTON, STRAWN & SHAW, of Chicago, for appellant; G. B. CHRISTENSEN and DOUGLAS C. MOIR, both of Chicago, of counsel.

SAMUEL L. GOLAN and HENRY A. KALCHEIM, both of Chicago, for appellee; LOUIS N. BLUMENTHAL and ELI A. GOLAN, both of Chicago, of counsel.

MR. JUSTICE JOHN J. SULLIVAN delivered the opinion of the court.

This is an action for damages for personal injuries alleged to have been suffered by plaintiff, Neuman

Fier, as the result of the negligence of the defendant, Chicago Orpheum Company. After a trial without a jury the court found the defendant guilty and assessed plaintiff's damages at $1,500 and judgment was entered upon said finding. This appeal followed.

This suit was commenced September 27, 1933, and plaintiff filed his amended declaration on July 12, 1934, consisting of two counts, the first alleging that defendant operated the Palace theatre in Chicago; that it was its duty to exercise ordinary care for the safety of plaintiff and to keep and maintain the stage, exits and wings of such theatre in a reasonably safe condition so as not to injure performers lawfully and by invitation of the defendant upon such premises; that on June 18, 1933, plaintiff was lawfully upon the stage of this theatre for the purpose of performing with his partner; that defendant, not regarding its duty, negligently and improperly permitted the said stage, or a portion thereof, to become in a dangerous and unsafe condition; that ''by means of the premises and the negligence of the defendant, as aforesaid, the plaintiff was then and there caused to and he did fall to and upon the floor and divers objects there with great force and violence''; and that he thereby sustained severe and permanent injuries.

The second count, dismissed at the close of plaintiff's evidence, charged specifically that defendant negligently permitted a certain light or lamp with its cords and wires to be and remain in a dangerous and unsafe position on the stage so that in leaving said stage during the course of his act plaintiff came into contact with same and fell upon the floor of the stage.

Fier was employed as an accompanist by Tess Gardella, whose stage name was Aunt Jemima. The only evidence in the record as to the alleged occurrence was that of plaintiff himself. He testified that as he was leaving the stage of the Palace theatre at about 4:15

p. m., June 18, 1933, after playing three numbers for Aunt Jemima, "I made three steps from the piano, sort of hurried steps, and I stepped on a ball . . . my left foot stepped on a ball and I was thrown to the floor . . . I stepped on the ball with my left foot and I fell to the floor on that side, the left side, turning my ankle, and I did not know what I had struck, and as I stood up I saw this ball trickle down to the foot-lights . . . it was an inflated ball, it was a red India rubber ball . . . about three inches in diameter." Plaintiff also testified that he did not know how the ball "got on the stage," that the ball may have been tossed there "from the audience," that the first time he ever saw the ball was just after the accident, that he had never seen it used in any act, and that he did not know where it came from nor who owned it.

The act in which plaintiff performed was shown four times daily for the week commencing June 16, 1933. After he claims to have fallen plaintiff proceeded to the south wing of the stage and immediately returned for an encore. He performed twice more that day in the act with Aunt Jemima and finished his week, making a total of 18 appearances after the alleged accident.

The stage of the theatre faces east and is 60 to 65 feet wide and 37 feet deep. During the performance in which plaintiff participated, the piano which he played was located in the center of what is known as the apron or front portion of the stage, which tilts downward toward the footlights. Plaintiff made his entrances and exits from the south wing of the apron while Aunt Jemima used the north wing. At the northeast opening off the stage, opposite the apron, an electrician was stationed, one of whose duties was to look out for and to remove any properties, paraphernalia or obstructions which might be on the stage. A like duty was performed by a property man, who

was stationed on the south side of the apron of the stage. In addition to directing the orchestra, it was the duty of the musical director, who, during a performance stands in the pit directly in front of the center of the stage facing same, to watch the stage and see that it was kept free from articles or properties not being used in the immediate act. In the event he located an article or object out of place or that did not belong on the stage, he had a system of signalling devices to advice the electrician and property man of the presence of such article or object so that same would be removed. The electrician, property man and musical director testified that they inspected the stage both before and after the act in which plaintiff performed and that there was nothing out of place or that did not belong there. Defendant's first notice of the alleged accident was by plaintiff's assertion to one of the property men backstage that he had fallen over a ball belonging to a juggler named Cavanaugh, who appeared on the same bill two acts prior to plaintiff's act. Two property men immediately thereafter checked Cavanaugh's trunk and found all twelve of the juggling balls used by him, which were canary yellow in color, properly in place in a bag located in said trunk.

Defendant's theory, as stated in its brief, is that "it is not an insurer of the safety of actors appearing on its stage; that the plaintiff cannot recover unless he establishes the negligence he alleged; that he completely failed in his proof because, notwithstanding repeated attempts, no showing was made that defendant knew of the presence of any ball upon the stage, or that it was there for such a length of time that defendant should have known of its presence. Defendant's further theory is that, although plaintiff at some time or place sprained his ankle, he never fell on defendant's stage."

Plaintiff's theory is that he "was an invitee and as such, the defendant, occupying and controlling the theatre, owed the plaintiff the duty to exercise reasonable care to have the stage on which he was to perform in a reasonably safe condition; that the defendant herein failed to exercise ordinary care in the maintenance of its stage and that the injuries suffered by the plaintiff were due to the defendant's neglect and breach of duty aforesaid."

The law is clear that it was defendant's duty to exercise ordinary care to maintain the stage upon which plaintiff was to perform and did perform in a reasonably safe condition. The stage being in defendant's control between acts, it was its duty to do whatever was necessary to clean it at the conclusion of each act and prepare it for the one to come and to have the stage free from all defects, which by the exercise of reasonable care could have been discovered and guarded against. (*Franklin v. Maine Amusement Co.*, 133 Me. 203, 175 Atl. 305.) Inasmuch as the negligence charged against defendant was a nonfeasance in that it permitted the stage to become in a dangerous and unsafe condition, it must appear not only that the rubber ball was on the stage and that plaintiff was injured by stepping or tripping on it, but also, either that the presence of the ball on the stage was actually known to the defendant through some of its agents or servants or that it was there for such a length of time prior to the alleged injury that defendant, if exercising ordinary diligence, would or should have known of its presence.

It must be conceded that there is no evidence that defendant had actual knowledge of the presence of the rubber ball on the stage. Was there then sufficient evidence or any evidence adduced upon the trial that the rubber ball had been on the stage long enough to charge the defendant with knowledge of its presence

in time to remove it? Plaintiff's act was performed entirely on the apron of the stage. The point where he testified he stepped or tripped on the ball was on the apron of the stage. The undisputed evidence was that the apron or front part of the stage tilted downward toward the footlights. He did not notice the ball until after he fell, when he saw it "trickle" down to the footlights. No other witness saw a ball of any kind on the stage or saw plaintiff fall or even stumble over a ball or anything else. There was no testimony by plaintiff or any other witness as to how long the ball had been on the stage, how it got there, to whom it belonged, or where it came from. Thus, there is no evidence in the record which even remotely suggests notice to the defendant of the presence of a ball on the stage. But plaintiff says on page 25 of his brief that "it is a fair, just and reasonable inference from the testimony of the witnesses . . . that the ball was left on the stage at the conclusion of Cavanaugh's juggling act and that it remained on the stage for not less than twenty minutes to a half hour" until plaintiff stepped on it. Because of the absolute lack of evidence as to either actual or constructive notice to defendant, plaintiff was compelled to resort to this inference theory, but no such deduction is permissible from the evidence. Cavanaugh's act, in which he juggled rubber balls, appeared on the program two acts before plaintiff's act. It was also performed entirely on the apron of the stage. McConnell's act, which followed Cavanaugh's act and immediately preceded plaintiff's act, was a comedy sketch lasting 16 minutes and occupied the entire stage. The difficulty with the inference plaintiff suggests is that it is illogical and that there is no evidence in the record from which it could be fairly or reasonable drawn. Inferences are only deducible from proven or admitted facts. What plaintiff really asks is that the negligence charged be

inferred by inferring the essential element thereof that one of the balls used by Cavanaugh was dropped on the stage and permitted to remain there for at least 20 minutes, notwithstanding the undisputed evidence that the alleged ball upon which plaintiff stepped was not a ball belonging to Cavanaugh. The stage was inspected at the conclusion of the Cavanaugh act by at least three of defendant's employees, whose duty it was to do so, and they testified that there was no rubber ball on same at that time. It was likewise inspected with the same result after the McConnell act. As heretofore said, plaintiff's act was performed entirely on the apron of the stage. He was moving across such apron when he claims to have stepped on the rubber ball and fallen. It is uncontradicted that the apron of the stage tilted downward toward the footlights. Plaintiff describes the rubber ball as being about the size of a tennis ball and we are unable to comprehend how it was physically possible for such a ball, even though it had been inadvertently left on the inclined apron of the stage, to have done anything except immediately roll down to the trough on the stage side of the footlights.

Plaintiff concedes in his brief that it is the rule "that in cases of this character the evidence must establish either that the defect was actually known to the defendant or that the same existed for a sufficient length of time prior to the injury that the defendant in the exercise of reasonable care would or should have known it" but strenuously insists that this rule is qualified and its force dispelled by the legal principles enunciated in *Moore v. American Stores Co.,* 169 Md. 541, 182 Atl. 436, where the court said at pp. 438–440:

"Applying these principles, which appear to be quite well settled and generally accepted, to the facts of this case, it cannot be said as a matter of law that the evidence permitted no rational inference that ap-

pellant's fall was caused by the appellee's negligence. That evidence is quite clear that the floor on which appellant slipped and fell was dark, and that its condition was not apparent to one using the facilities of the store in an ordinary way. That part of it on which appellant fell was adjacent to the meat counter, and was greasy and slippery, so slippery that defendant's feet went from under her, she slid or skidded on it, and the heels of her shoes left distinct skidmarks lighter in color than the rest of the floor. It cannot be assumed that, if appellee knowingly permitted its floor to be in a greasy and unsafe condition, it had fully discharged its duty to exercise ordinary care for the protection of persons whom it had invited to its store. Appellee's reply to that conclusion is (1) the fact that the floor was greasy is no evidence of negligence, and (2) that the fact that the floor was 'greasy looking' merely created the inference that at some indefinite time in the past it had been oiled. The answer to the second criticism is that there was no evidence of any kind that the floor had ever been oiled. It may have been oiled, waxed, painted, greased, of dark wood or merely dirty, so that no inference that it had been oiled is compelled by the fact that it was dark or by evidence that it was greasy. The other criticism, that the fact that the floor was greasy 'does not prove negligence,' is true only to this extent, that while in itself it may or may not have proved negligence, it was certainly evidence of negligence, and, if shown to have existed under circumstances charging the appellee with notice of the condition, it was proof of negligence.

"The facts of this case are sufficient to impute to the appellee constructive knowledge of the greasy condition of the floor. . . .

" . . . Any breach of that duty resulting in injury to one lawfully on its premises as an invitee would constitute negligence, if, but only if, it knew, or by the

exercise of reasonable care could have discovered, the conditions which created the peril, and had no reason to believe that its invitees would realize the risk involved therein. Restatement of Law of Torts, § 343; 45 C. J. 651, Negligence, § 25 and notes. It is not necessary that there be proof that the inviter had actual knowledge of the conditions creating the peril, it is enough if it appear that it could have discovered them by the exercise of ordinary care, 45 C. J. 653 et seq., so that, if it is shown that the conditions have existed for a time sufficient to permit one under a duty to know of them, to discover them, had he exercised reasonable care, his failure to discover them may in itself be evidence of negligence sufficient to charge him with knowledge of them. Id. What will amount to sufficient time depends upon the circumstances of the particular case, and involves consideration of the nature of the danger, the number of persons likely to be affected by it, the diligence required to discover or prevent it, opportunities and means of knowledge, the foresight which a person of ordinary care and prudence would be expected to exercise under the circumstances, and the forseeable consequences of the conditions.'' That case expressly recognizes the rule that such a breach of duty as is charged against defendant here constitutes negligence ''only if, it knew, or by the exercise of reasonable care could have discovered the condition that created the peril'' and the employment of the qualifying language therein as to matters that should properly be considered in determining what amounts to a sufficient time in which to discover the defect or dangerous condition in order to impute constructive knowledge of same to a party charged with the breach of duty was not intended to impair the force of such rule. The facts in the *Moore* case are readily distinguishable from the facts in the instant case. The greasy condition of the floor adjacent to the meat

counter in the store necessarily existed for sometime before the plaintiff in that case slipped on same and from its very nature should have been discovered by the exercise of reasonable care on the part of the owner or operator of the place of business. An entirely different situation is presented here since there is no evidence of the presence of the red rubber ball on the stage prior to the time plaintiff claims he stepped or tripped on same.

Plaintiff contends that the case of *Franklin v. Maine Amusement Co., supra,* is squarely in point and that the reasoning of the court and the conclusions reached therein afford ample authority for the affirmance of the judgment in the case at bar. In its opinion in the *Franklin* case, the court said at pp. 204–206:

''The plaintiff, a vaudeville actor, was injured while carrying on his act on the stage of Keith's Theatre in Portland, which was controlled and operated by the defendant. The plaintiff's engagement called for three performances a day for three days and the accident happened during the last performance. The act was billed as 'Trifles With Rifles in Class and Speed,' and was an exhibition of markmanship carried through with great rapidity. It consisted of shooting a piece of chalk from his assistant's mouth, shooting out candles, shooting a cape from a woman's back, and several other feats, which unquestionably required not only a high degree of skill, but a steady nerve and strict attention to the work at hand. In the six minutes, during which the act continued, there were fired approximately a hundred and fifty shots. In one of the features the plaintiff ran from the wings on the left of the stage as the audience faced it, and, as he neared the opposite side, sliding on his feet and leaning backwards on his left hand, he fired at a target in the back of the stage. According to his story, as he was doing this stunt, his feet struck a wet spot on the

stage, and he was thrown forward so suddenly that his left leg was broken. His claim is that this dampness was caused by water, which had not been wiped up, spilled on the stage in an earlier act, which went on about two hours and a half before his. It appears that in this act some water was spilled. The defendant contends that the amount was less than a teacupful, and was dropped on the opposite side of the stage from where the plaintiff was injured. The plaintiff claims that the water was left on different parts of the stage and in a much larger amount. It is apparently conceded that the stage between acts was in the control of the defendant, and that it was its duty to do whatever was necessary to clean it at the conclusion of each act and to prepare it for the one to come. The plaintiff testified that on previous occasions the water had been mopped up at the conclusion of the act in question. However that may be, it seems to be unquestioned that on the night of the accident this precaution was not taken. The defendant argues that in a steam-heated theatre the small amount of water left would disappear in two and a half hours. The plaintiff's own testimony, that of his stepdaughter, who assisted him, and of his chauffeur, is that the stage was damp where he fell. The defendant does not seriously maintain that this particular question was not for the jury. The principal claim is that this dampness was not such a hidden danger as to render the defendant liable, and that the plaintiff was himself negligent in not observing the condition of the stage.

''The plaintiff was not an employee of the defendant. He was an independent contractor, an invitee, *Miller & Rose et al. v. Industrial Commission of Wisconsin and Rich*, 195 Wis. 468, 218 N. W. 716; *Edwards v. Alhambra Theatre Company*, 198 Wis. 228, 224 N. W. 104; and as such the defendant owed him the duty to have the stage on which he was to perform free from all

hidden defects, which by the exercise of reasonable care could have been discovered and guarded against, *Indermaur v. Dames,* L. R. 1 C. P. 274; *Mayhew v. Sullivan Mining Company,* 76 Me. 100; *Low v. Grand Trunk Railway Company,* 72 Me. 313. It must be borne in mind that in speaking of hidden defects we use a relative term. What may be apparent in the daytime may become a pitfall in the darkness or when the light is dim; and, likewise, a condition obvious to one with an opportunity to investigate, may be a trap to him who is precluded by the nature of his work from making a careful examination. *Low v. Grand Trunk Railway Company, supra.*

"The case before us is with respect to the defendant's negligence not unlike *Brown v. Rhoades,* 126 Me. 186, 137 A. 58, in which the sufficiency of a declaration was challenged by a demurrer. The declaration alleged in substance that the defendant was the operator of an amusement parlor in which there was a steep chute extending from the ceiling to the floor. The plaintiff, a child, who was wearing rubber sneakers, in sliding down this chute attempted to check his speed by bracing his feet. The friction was so great that his momentum was suddenly stopped, and he was thrown and injured. The opinion of the court holds that on the admitted facts different inferences could be drawn as to the duty of the defendant to warn a child of tender years of such a danger, and that the issue should be submitted to a jury for determination. In other words, the risk may have been a hidden one to this child because of his immaturity; in the case before us the plaintiff claims that it was hidden from him because of the conditions under which he was forced to operate.

"Likewise the extent of the plaintiff's obligation to exercise care for his own safety is measured by the particular circumstances connected with his work. In

so far as he himself had the opportunity to examine approaches, equipment, and the place where his act was to be carried on, he and not the management may be responsible for his failure to guard against a dangerous situation.

"In this case it seems to us that these issues were all for the jury. Was there in fact a damp spot on the floor? Was this the cause of the accident? Was it a risk which the plaintiff assumed as naturally incident to his work, or a condition for which the management was answerable? Also the jury must decide the issue of his own due care. If his contention is correct that he fell on that part of the state known as the apron, which was concealed from him by the curtain as he prepared for his act, should he have taken precautions before making his slide to see that conditions were safe for him?

"It was the province of the jury to pass on the conflicting testimony in this case, and to draw inferences from such facts as should be proved or admitted." It is insisted that the factual situation in the *Franklin* case is identical with that presented here, but we fail to perceive any real similarity except as concerns the relationship of the parties to each other, the plaintiff there being a performer and the defendant a theatre owner. It will be noted that in that case there was no issue on the question of notice and the undisputed evidence showed that the defendant knew of the presence of water which had been spilled on the stage in a preceding act. In any event knowledge or notice of the presence of the water would necessarily be imputed to the defendant in that case because the uncontradicted evidence showed that it had been dropped on the stage during the course of an act performed 2½ hours previously. There the court merely found *inter alia* that there was a conflict in the evidence as to the amount of water dropped on the stage, where it was dropped

and whether sufficient time had elapsed for it to have evaporated, and reiterated the elementary rule that it was the province of the jury to pass upon those disputed questions of fact.

As already shown the only issue in the instant case is the question of notice to defendant of the presence of the ball on the stage and no issue of fact arises on that question since there is no evidence in the record that the defendant had any actual knowledge that the ball was on the stage prior to plaintiff's claimed injury or that it was there for such a length of time that defendant could or should by the exercise of ordinary care have known of its presence. Neither were there any facts proved or admitted from which it could be fairly and reasonably inferred that defendant knew or should have known that there was a rubber ball on the stage. The burden was upon plaintiff to prove the notice and negligence alleged and he utterly failed to make such proof.

That the trial judge was confused as to the principles of law applicable to the issues presented is indicated by the following observations made by him in passing upon defendant's motion for a finding in its favor at the close of plaintiff's evidence: "I don't think this is the class of case which would require notice. It is the class of cases where the defendant has to use ordinary care to keep the stage in a safe condition. Isn't this a case of *res ipsa loquitur?*" If the court predicated its judgment upon the views thus expressed it would be clearly erroneous.

While it is true that plaintiff dismissed as to the second count of his complaint which contained the only specific charge as to the cause of his injuries, we think it appropriate nevertheless to call attention to same. That count which alleged specifically that plaintiff was injured by tripping over wires or cords connected with a light or lamp on the stage or in the wing thereof is

significant only in that it sets forth the theory entertained by plaintiff and his counsel as to the cause of the accident at the time the complaint was filed.

In a case of this character it was as essential to prove actual or constructive notice to defendant of the alleged unsafe condition of the stage by reason of the presence of the rubber ball thereon as it was to prove plaintiff's injury by reason of such purported unsafe condition. Since there is no evidence in this record that tends to show that defendant had knowledge or notice of the claimed unsafe condition of the stage, plaintiff failed to prove the negligence charged against defendant and the latter's motion for a finding in its behalf should have been sustained.

The judgment of the circuit court is therefore reversed.

*Judgment reversed.*

FRIEND, P. J., and SCANLAN, J., concur.