Miss Agnes McQuillan appeals from a judgment dismissing her suit against the City of New Orleans for $3,646.94, which she claimed to be due her as damages for physical injuries sustained as a result of a fall caused by her foot being caught in a metal grating which forms a part of a city sidewalk. The suit was originally brought against the Canal Bank Trust Company in liquidation, the owners of the "Canal Building", the abutting property, the National Bank of Commerce, the occupants of the ground floor of the Canal Building, and the City of New Orleans. The National Bank of Commerce filed an exception of no cause of action which was maintained and acquiesced in by plaintiff. The Canal Bank Trust Company in liquidation entered into an agreement of compromise and the suit against it was dismissed. The case continued against the City of New Orleans alone.
Miss McQuillan, in her petition, alleges that on the 3rd day of November, 1941, at mid-day, she was walking on the sidewalk in front of the "Canal Building", which is located at the corner of Baronne and Common Streets, and on that portion of the sidewalk next to the building or property line; that the street was crowded with other pedestrians which necessitated her walking upon a metal grating installed in the sidewalk next to the Canal Building; that as she did so, her shoe caught in an opening in the grating causing her to be precipitated violently to the sidewalk; that the grating, which was installed in the sidewalk at the time the Canal Building was erected about fifteen years ago, for its convenience, "is a source of danger to pedestrians chiefly because of its tendency to become slippery and because the opening in said grating are sufficiently large to catch a portion of shoes worn by ladies such as the heels, toes or sole, etc."
The City filed an exception of no right or cause of action which was overruled and subsequently it answered setting forth the following defenses:
First: That the grating did not constitute a defective condition in the sidewalk.
Second: That if the grating did constitute a defective condition the City had no knowledge of its existence, and
Finally, and in the alternative, pleaded contributory negligence on the part of plaintiff.
The obligation of the City with respect to its sidewalks is to keep them reasonably safe for pedestrian use. If defective the City must have either actual or constructive notice. If the City, in this instance, did not have actual notice, the grating had been installed and had remained at that locality for more than fifteen years, therefore, if the sidewalk is indeed unreasonably defective the City will be held to have had constructive notice after the passage of that length of time. McQuillin on Municipal Corporations, 2d Ed., Vol. 7, p. 240.
The important question is whether the existence of this grating on the sidewalk was, in fact, hazardous or dangerous so as to make its use unsafe for pedestrians. It is next to the property line of the bank building and its dimensions are 3 1/2' x 12'. It is composed of iron and there is nothing unstable about it or its installation, consequently, the danger, if any, is to be found in its design. The holes in the grating, it is contended, are a menace, particularly to female pedestrians in view of the current vogue with respect to narrow heels and toes, etc. A plaster cast of a segment of the grating has been introduced *Page 220 
in evidence and it indicates that the holes are 1 1/2" at their widest point. The shoe worn by Miss McQuillan at the time of the accident has been introduced in evidence and it appears that the sole has parted in the middle, the suggestion being that this was caused on the day of the accident by the shoe being caught in the hole. There is, however, no testimony to this effect and no proof of the alleged slippery character of the grating.
Miss Bessie Wofford Sanders, Mrs. J.D. Davis and Mrs. Wilhelmina Apffel testified that they tripped on this grating and fell.
Mr. Louis Ottendorfer, a City policeman stationed in that vicinity, testified that he had seen one or two people fall in the neighborhood of or on the grating in the two years he had been stationed there.
Counsel for the City point to the fact that that is one of the busiest sections of the City and that over the years since the installation of these gratings (there are several of them) it has received no complaints of injuries prior to the present accident and argues that because of the thousands of people who use that particular sidewalk every day without injury, it is an indication that it is reasonably safe. We believe this testimony to be a factor, as we have previously said of similar testimony in other cases, but not conclusive of the harmless condition of the sidewalk. Lawson v. D.H. Holmes Company, Ltd., La.App., 200 So. 163; Cassanova v. Paramount-Richards Theatres, Inc., et al., La.App., 11 So.2d 238; Cassanova v. Paramount-Richards Theatres, Inc. et al., 204 La. 813, 16 So.2d 444 (on application for rehearing in Supreme Court).
"The duty of Municipal corporations is only to see that its sidewalks are safe for persons exercising ordinary care and prudence." Peetz v. St. Charles St. Railroad Company, 42 La.Ann. 541, 7 So. 688, 689.
"Sidewalks must be reasonably safe, not perfect nor foolproof." Brown v. City of New Orleans, 7 La.App. 611.
The grating under consideration here was level with the surrounding sidewalk and, therefore, constituted no hazard such as missing bricks in other cases considered by us. Cato v. City of New Orleans, La.App., 4 So.2d 450 for example. It was not slippery and, if dangerous, it was solely because of the holes in the design of the grating which, as we have said, were not more than 1 1/2" at the widest point. The gratings are designed so as to permit the circulation of air in the basement of the Canal Building and, in that respect, they serve a useful and necessary purpose. It is true that the shoes which women presently wear sometimes have narrow toes and heels, and, if the writer's observation is not at fault, are frequently without any covering over the toes at all, and, of course, the narrower the shoes are the more likelihood of their being engaged in a hole 1 1/2" wide. When this grating was installed fifteen years ago the style in women's shoes might have been different and, doubtless, will be different before many years hence. It may be that our women will wear sturdier and wider shoes or it is as safe to predict narrower and flimsier ones. But must our sidewalks be altered with the prevailing mode of foot-gear or should the women be charged with greater or less caution as the changing styles require. We incline to the latter view and are constrained to hold this sidewalk is reasonably safe for the pedestrian who is reasonably shod.
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.