Violet STEVENS, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. No. 8330.

United States District Court
N. D. Ohio, W. D.

Nov. 16, 1960.

Marcus L. Friedman, Toledo, Ohio, for plaintiff.

Russell E. Ake, U. S. Atty., Cleveland, Ohio, Carl F. LaRue, Asst. U. S. Atty., Toledo, Ohio, for defendant.

KLOEB, District Judge.

This action was filed pursuant to the provisions of the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), and 2671 et seq.

Plaintiff claims that, on the 2d day of September, 1959, at about 6:30 o'clock in the morning, she was walking through the exit and down the steps from the United States Post Office on Madison Avenue, Toledo, Ohio, when, because of the negligence of the defendant in maintaining the slots in the stairway without guard-rails for the protection of the public using the steps, she was caused to trip and fall and sustain certain bodily injuries. She claims that the defendant United States of America was negligent in "failing to place a guard-rail for the use of the public using said steps and failing to place any sign or warning of the condition of the steps and the failure to have guard-rails".

The case was tried to the Court on the 18th day of October, 1960, and thereafter submitted to the Court on the evidence, the exhibits and the written arguments of counsel.

Plaintiff Violet Stevens testified, in effect, as follows: "It was raining as I was going down the steps; I slipped and fell; it seems I fell down the complete steps; I did have high heels on".

In response to the question "Did a heel catch in one of the grooves?", she replied "It could have".

On cross examination she testified as follows: "I frequently use the main Post Office and have used the steps on many occasions; I was near the side of the hand-rail but I don't know why I didn't use it; I don't know why I didn't go over to the side where there are no grooves. It started to rain while I was in the Post Office building, I had an open umbrella and carried a rain coat and a package under my arm and a purse. As I fell I think I reached for the hand-rail but could not reach it because I was not near enough. Cannot say which steps I slipped on; something threw me but I can't say what, the steps, shoes—it was slippery".

Mr. Dwight Nelson, a Postal Inspector, testified that the steps are 14 feet 6¼ inches wide between hand-rails which are on either side; that the door is 4 to 5 feet wide, and that the flooring outside the door on the step is covered with a brass plate with abrasive material; that there is a 2½ foot gap between edge of the floor covering and the hand-rail on either side. He identified Defendant's Exhibit B, which is a piece of the tread

taken from the covering on the Post Office steps. Mr. Nelson further testified that it is normally two or three steps from outside the door over to the hand-rail on either side.

Merlin R. Keister, Tour Superintendent in the employ of the defendant, testified that, on September 2, 1959, he went to the Madison Avenue steps on call and found plaintiff leaning against a rail alongside the steps; that it had been raining; that she had an umbrella, a hand bag, a rain coat and a bundle, and that she said to him "If it hadn't rained I wouldn't have fallen"; that he examined the steps and found nothing wrong, i. e., no defects thereon; that the steps were wet.

Melvin H. Mull, an architect, identified Defendant's Exhibit B, and testified that this form of tread is designed to minimize slipperiness and is used by and employed by architects; that the standard size tread for steps is 6 by 12 or 6½ by 13, such as is utilized at the entrance in question.

In view of the undisputed evidence that the steps were equipped with guard rails on either side, and that the plaintiff, through much prior use of the steps in question, was familiar with the steps, thereby obviating the necessity of a warning, if any were called for, we pass over the allegations of negligence as to the failure to place a guard rail and failure to give warning.

As to the allegation of negligence charging that the defendant allowed the steps to be equipped with slots, knowing the same to be dangerous, we call attention to the testimony of the plaintiff in connection with Plaintiff's Exhibits 3 and 4 (her shoes) and Defendant's Exhibit B (section of step tread). Plaintiff was unable to find any place in the tread where her shoes, although high heeled ones, were able to penetrate. This leaves us with the testimony of the plaintiff, heretofore quoted, when she said that she could not say which step she slipped on but that something threw her and she couldn't say what, "the steps, the shoes —it was slippery".

If we would assume, which we cannot from the evidence, that the plaintiff's fall could be attributed to the penetration of the heel of her shoe in an opening in the mat, then we would be confronted with the question of whether or not the defendant in the operation of its Post Office or any other place of business would be required to alter or design its gratings to conform with the prevailing mode of footwear worn by women pedestrians.

We find in the case of McQuillan v. City of New Orleans, La.App.1944, 18 So.2d 218, at page 220, the following:

"* * * It is true that the shoes which women presently wear sometimes have narrow toes and heels, and, if the writer's observation is not at fault, are frequently without any covering over the toes at all, and, of course, the narrower the shoes are the more likelihood of their being engaged in a hole 1½″ wide. When this grating was installed fifteen years ago the style in women's shoes might have been different and, doubtless, will be different before many years hence. It may be that our women will wear sturdier and wider shoes or it is as safe to predict narrower and flimsier ones. But must our sidewalks be altered with the prevailing mode of footgear or should the women be charged with greater or less caution as the changing styles require. We incline to the latter view and are constrained to hold this sidewalk is reasonably safe for the pedestrian who is reasonably shod."

In the case of Pastrick v. S. S. Kresge Co., 1934, 288 Mass. 194, 192 N.E. 485, the plaintiff testified that "she went down four or five stairs without taking hold of the hand-rail, had her weight on her right foot and was bringing her left foot off the tread above when the sole at the toe of her shoe on her left foot caught in one of the grooves," and she fell.

The Court held that a well lighted stairway equipped with hand-rails and safety treads was not defective in having

treads whose combined width and rise exceeded the 17½ inches alleged to conform to pacing cadence of ordinary person, and hence a store maintaining such a stairway was not liable to a customer for injuries resulting from a fall thereon. The Court was of the opinion that the stairway in question was not uncommon in construction, and presented no defect and no unusual danger.

In the case of Shorkey v. Great Atlantic and Pacific Tea Co., 1932, 259 Mich. 450, 243 N.W. 257, the plaintiff stepped on a hot air register located near a counter about the center of the store. The heel of her shoe went through a hole in the register, and she was thrown and injured. Plaintiff's heels were high and about three-quarter inch by one inch across the bottom. She had worn similar shoes for nine years, and they were in common use by a great many women. She had been in defendant's store nearly every day for a year, and knew the location of the register. The meshes in the hot air register were about one inch square, some variations occurring in manufacturing, and, on experiment, it was found that the heels of plaintiff's shoes would go through several but not all of the openings.

The Court concluded that the storekeeper was not an insurer of the safety of its customers, but need only use reasonable care to provide a reasonably safe place for them; that the customer who caught her heel in a hot air register in the store and fell had a duty to make reasonable observations about her and in failing to do so she was held guilty of negligence barring recovery for her injuries.

We conclude that the defendant had the obligation of exercising ordinary care toward plaintiff; that there is no showing that such care was not exercised; that the evidence fails to establish negligence as charged against the defendant in plaintiff's complaint; that the fall and consequent injury to the plaintiff was the result of her own negligence in the use of the steps and in her failure to make use of the facilities provided.

The motion of the defendant for dismissal of the complaint is sustained. An order may be drawn accordingly.