Ida Tolman, Plaintiff-Appellee, v. Wieboldt Stores, Inc., a Corporation, Defendant-Appellant.

Gen. No. 50,621.

First District, Fourth Division.

July 22, 1966.

Rehearing denied September 12, 1966.

321

McCORMICK, J., dissenting.

Lord, Bissell & Brook, of Chicago (Richard E. Mueller, Richard C. Valentine and Thomas W. Dempsey, of counsel), for appellant.

David Alswang, of Chicago, for appellee.

MR. PRESIDING JUSTICE DRUCKER delivered the opinion of the court.

This is an appeal from a judgment in favor of plaintiff and from an order denying defendant's motion for a directed verdict, defendant's motion for judgment notwithstanding the verdict and the order denying defendant's motion for a new trial. After a jury trial, a verdict and judgment for $10,000 was rendered for the plaintiff for injuries sustained on November 29, 1960, when plaintiff fell on an escalator in defendant's store. Defendant urges reversal on the theory that plaintiff failed to make out a prima facie case; that there was no evidence that defendant knew or should have known that the escalator was unsafe and that there is no competent evidence that the escalator was unsafe. In the alternative defendant urges certain trial errors as grounds for a new trial.

Plaintiff introduced into evidence, over objection, two interrogatories propounded to defendant in pretrial discovery proceedings and defendant's answers thereto:

Interrogatory No. 1: For a five-year period prior to November 29, 1960, and while you were known

as Mandel Brothers, or you operated, or had control of the escalator specified in the complaint, was anybody injured on said escalator by catching any part of their shoe, or tripping on the slats, or surface of the treads of said escalator?

The answer is: This defendant has no actual knowledge of any such circumstances. However, based upon hearsay evidence (sic), the answer to interrogatory No. 1 as it pertains to Mandel Brothers, Inc., the answer is yes. There is no record or information as to any such occurrences during the period of time this defendant was in possession and control of the involved premises and escalator thereon. No records are available prior to October 1, 1956.

Interrogatory No. 2: If the answer to the aforegoing is yes, state the name or names and address or addresses of the person or persons injured, the approximate date of injury, and the manner in which the injury occurred.

Answer to Interrogatory No. 2: Based upon hearsay information, the defendant lists the following names, addresses and dates relating to incidents which occurred subsequent to October 1, 1956, and during the period of time that the involved premises and escalator thereon was in possession and control of Mandel Brothers, Inc.: [The names and addresses of eleven women are listed.]

Answers to interrogatories may be used in evidence to the same extent as depositions of an adverse party. [Ill Rev Stats, 1959, c 110, § 101.19–11(4).] Discovery depositions may be used only as provided by Supreme Court Rule 19–10(2) [Ill Rev Stats, 1959, c 110, § 101.19–10 (2)]:

Discovery depositions may be used only (a) for the purpose of impeaching the testimony of de-

323

ponent as a witness in the same manner and to the same extent as any inconsistent statement made by a witness; or (b) as an admission made by a party or by an officer or agent of a party in the same manner and to the same extent as any other admission made by that person; or (c) if otherwise admissible as an exception to the hearsay rule.

The answers to the interrogatories clearly stated the defendant had no knowledge of prior accidents. The added information in the answers filed over a year after the incident was stated to be upon hearsay evidence "as it pertains to Mandel Brothers, Inc." There was no proof by plaintiff that this information or any knowledge of the eleven accidents came to the defendant prior to the incident.[1] The answers were not admissions, were not used for the purpose of impeachment and were not admissible as an exception to the hearsay rule. Therefore, the court committed serious prejudicial error in allowing the answers to be admitted into evidence.

■ No other evidence was introduced by which plaintiff sought to establish knowledge or notice to defendant. Plaintiff argues that there is an inference from the testimony of James Gunderson, defendant's witness, that the defendant knew of the dangerous, unsafe and outmoded condition of the escalator. This witness testified that he was Chief Engineer of defendant from the time they took over the store from Mandel Brothers on August 18, 1960; that he had worked for Mandel Brothers at various times from 1936 on; that he had the same duties after defendant took over as above; that he saw the escalator daily and that there had been no change in the treads since 1936. We cannot find in this evidence any basis for holding that the Chief Engineer's daily

[1] We would also point out that there is nothing in the answers to interrogatories, nor anywhere else in the record in this case, with regard to the cause of those eleven "incidents."

324

observation was proof of knowledge that the escalator was dangerous or unsafe. He was not asked about the eleven accidents mentioned in answers to the interrogatories although plaintiff, of course, had the clear opportunity to do so. Since we have held that these answers were not admissible, and since plaintiff chose not to question Gunderson concerning the accidents, she cannot maintain her argument that Gunderson must or should have known about the accidents. In regard to knowledge or notice as a prerequisite to liability, the court in Fier v. Chicago Orpheum Co., 295 Ill App 247, 14 NE2d 860 said at page 262:

> Since there is no evidence in this record that tends to show that defendant had knowledge or notice of the claimed unsafe condition of the stage, plaintiff failed to prove the negligence charged against defendant and the latter's motion for a finding in its behalf should have been sustained.

So in the instant case we find no evidence, nor is there any inference from the evidence adduced, that the defendant had either notice or knowledge, actual or constructive, of the alleged unsafe condition of the escalator.

Plaintiff's complaint also charges that the defendant negligently permitted the escalator to be old, outmoded and unsafe in that (1) "the surface of the said escalator was equipped with wooden slats which were spaced far enough apart so that the heel of a woman's shoe was likely to be caught between the said slats thereof and thereby said person caused to lose her balance in attempting to remove the heel of her shoe so caught or forced between the space of the slats thereof," and (2) the escalator "was not the type used as a matter of custom, practice and usage by retail department stores in the loop district of the City of Chicago, or by the said defendant in other parts of its said store described as aforementioned; that it was the general custom, prac-

tice and usage at the said time of retail department stores in the loop district of the City of Chicago, including the aforementioned store of the defendant in divers other portions of the said store, to maintain and have in use escalators the surface of which was equipped with steel ridges placed close enough together so that the heel of a customer's shoe could not be caught between the spaces of the said ridges."

 Plaintiff, the only occurrence witness, testified:

> I got on the escalator from the basement going to the first floor. I held the hand rail on the right side. This rail was going up. The rail on the left side was stationary. The treads were wooden slats spaced apart between $3/4$ and 1 inch. The space between each slat was about 1 inch deep.[2]
>
> I went up the escalator about one fourth and realized the heel of my left shoe was caught between the slats. I tried to get it out, I tried to shake my foot, but I couldn't get it loose. I was getting to the top. I gave my foot a violent shake. My foot slipped out of the shoe. I fell backwards on my back.
>
> . . . . . .
>
> I bought these shoes about 9 months before at the same store [then owned by Mandel Brothers].
>
> . . . . . .
>
> I assume that it was the bottom portion of the heel on my left shoe that caught.

She further testified that defendant had other escalators which had a metal tread and ridges about a quarter of

---

[2] Chief Engineer Gunderson testified that "the distance between the cleats was five-eighths of an inch."

an inch apart;[3] that she saw and used escalators similar to those in other loop stores, including Field's and Goldblatt's. In a three-month period prior to this she did not see an escalator in any other store in the loop similar to the one she fell on. From this evidence plaintiff argues that the escalator was old, outmoded and unsafe. While we do not consider this evidence sufficient to establish a custom, we nevertheless refer to Turner v. Chicago Housing Authority, 11 Ill App2d 160, 136 NE2d 543, where the court stated at page 165:

> While evidence of a deviation from customary practice is admissible and may be considered by the jury along with the other evidence in the case tending to indicate negligence, it is not, in itself, proof of negligence and cannot, standing alone, sustain a recovery. Peterson v. Feltenberger, 102 Pa Super 6, 156 A 621. So, in the instant case, a showing that the construction of the stairs was not standard is not enough. It must be shown that the deviation from the standard resulted in an unreasonably dangerous and unsafe condition. Kelly v. Loft Inc., 124 NJL 185, 11 A2d 58; Kahn v. Werbel, 4 NJ Super 184, 66 A2d 559.

In the instant case there was no evidence of noncompliance with any statute or ordinance or that defendant had violated its duty toward plaintiff in the construction or maintenance of the escalator. In McQuillan v. City of New Orleans, (La App), 18 So2d 218 (1944), the court said at page 220:

---

[3] While plaintiff's ⅝th inch heel would not catch in a ¼ inch space, a ¼ inch heel (frequently found on women's shoes in the current mode) could do so. For a ¼ inch heel the ⅝ inch space would be safer and vice versa. One difficulty arising from this approach to the problem of escalator design is that at any given time there are heels being worn in a great variety of widths. Of this we take judicial notice.

It is true that the shoes which women presently wear sometimes have narrow toes and heels, and, if the writer's observation is not at fault, are frequently without any covering over the toes at all, and, of course, the narrower the shoes are the more likelihood of their being engaged in a hole 1½″ wide. When this grating was installed 15 years ago the style in women's shoes might have been different and, doubtless, will be different before many years hence. It may be that our women will wear sturdier and wider shoes or it is as safe to predict narrower and flimsier ones. But must our sidewalks be altered with the prevailing mode of footgear or should the women be charged with greater or less caution as the changing styles require. We incline to the latter view and are constrained to hold this sidewalk is reasonably safe for the pedestrian who is reasonably shod.

The reasoning of the court is particularly applicable in the instant case even though plaintiff whimsically claims it is distinguishable because plaintiff purchased her shoes at defendant's store.

■ We are aware of no decision which supports the proposition advocated by plaintiff (and by our colleague) to the effect that the mere occurrence of injury to a passenger raises a presumption of negligence on the part of a common carrier.[4] In each of the cases cited there was something more. In Heffernan v. Mandel Bros., Inc., 297 Ill App 272, 17 NE2d 523, the plaintiff claimed that the escalator "started to vibrate, and it pushed me from one side to the other, and then it gave some kind of a jerk and threw me off my feet"; in McBride v. May Dept. Stores Co., 39 Ohio App 420, 177 NE 773 there was

---

[4] There is no dispute over the common carrier status of defendant in the instant case.

evidence of defective slats on an escalator; in Petrie v. Kaufmann & Baer Co., 291 Pa 211, 139 A 878, the escalator gave a sudden jerk throwing plaintiff down onto the stairs; in Springer v. Ford, 189 Ill 430, 59 NE 953, the injury was caused by the "breaking" or "giving way" of an elevator; in Carson v. Weston Hotel Corp., 351 Ill App 523, 115 NE2d 800, an elevator also "gave way"; and in Cobb v. Marshall Field & Co., 22 Ill App2d 143, 159 NE2d 520, the elevator fell 120 feet or more while plaintiff was a passenger.

██ Defendant's alternative contention is for a new trial because of trial errors. We agree that there were such errors which would require a new trial, particularly the admission into evidence of the interrogatory answers, referred to above, and a highly prejudicial photograph,[5] but, in view of our decision, we will not discuss this point in further detail.

The court erred in not directing a verdict for defendant at the close of all the evidence. Therefore, judgment is reversed and judgment for the defendant is entered here.

Reversed—judgment for defendant.

ENGLISH, J., concurs.

McCORMICK, J., dissents:

I must dissent to the majority opinion. The issues in a lawsuit are formed by the pleadings. In the instant case a motion of the defendant to strike the complaint on the ground that it did not state a cause of action

[5] The photograph (Plaintiff's Exhibit 9) portrayed a new replacement escalator and a large sign next to it of which the following was visible: "NEW ESCALATOR: SWIFT. SMOOTH. SA." Plaintiff's attorney in his argument to the jury dwelt heavily on the presence of a sign proclaiming the new escalator as being "swift, smooth and safe."

was denied. Defendant thereupon filed an answer. 30 ILP Pleading § 232 summarizes the Illinois rule that failure of a complaint fully or sufficiently to state a good cause of action is a defect open to waiver, but a total failure to plead a cause of action is a fatal defect open to attack at any time before or after judgment. In the instant case the complaint, in my opinion, did state a cause of action. The defendant practically admitted this since, in its reply brief, it stated that it was plaintiff's duty to prove "a cause of action," and apparently it was not relying on any defect in the complaint.

In the complaint it is stated that the plaintiff, at the invitation of the defendant, was in the basement premises of defendant's store and was using the escalator to go from the basement to the first floor. The plaintiff charges that it became and was the duty of the defendant to use the highest degree of care consistent with the practical operation of the escalator and to maintain, control and equip the escalator for the safety of customers having occasion to use it; that the defendant failed to fulfill its duty in that regard, and that as a result the plaintiff, while in the exercise of. due care, lost her balance and fell or was thrown down, injuring herself. It is also alleged that the defendant, in violation of its duty, carelessly, negligently and improperly permitted and allowed the said escalator to be old, outmoded, and unsafe in that its surface was equipped with wooden slats spaced far enough apart so that the heel of a woman's shoe was likely to be caught between the slats; that the type of escalator in question did not conform to the escalators used by other retail department stores in the Loop district of the city of Chicago, or by the defendant in other parts of its store, inasmuch as the usage in the Loop district of the city of Chicago at the time was to maintain and have in use escalators, the surfaces of which were equipped with steel ridges placed close enough together so that the heel of a woman cus-

tomer's shoe would not be caught between the spaces of the said ridges. There is also the formal allegation of damages suffered by the plaintiff.

The answer of the defendant denies practically all the allegations in the complaint except the allegation that it was the duty of the defendant in providing and operating the escalator to use the highest degree of care consistent with its practical operation.

In passing on a post-trial motion asking for judgment notwithstanding the verdict the trial court must apply the same rule which would be applied in passing on a motion for a directed verdict at the close of all the evidence, and a single question is presented as to whether there is in the record any evidence which, standing alone and taken with all intendments most favorable to the party resisting the motion, tends to prove the material elements of the case. 23 ILP Judgments § 122, and cases cited. In Lutz v. Chicago Transit Authority, 36 Ill App 2d 79, 183 NE2d 579, the court said:

> "The test to be applied to a defendant's motion for a directed verdict is whether there is any evidence or reasonable inferences arising from the evidence, tending to prove the cause of action alleged in the complaint. On such a motion, in a jury trial, the court does not weigh the evidence or the inferences to be drawn from the evidence. These are questions for the jury and not for the court to consider. The court must decide if the plaintiff's evidence fails as a matter of law to establish the claim. It becomes a question of law only where the evidence is such that all reasonable men would reach the same conclusion or where there is a total failure to prove one or more of the elements necessary to the cause of action. If it appears that all reasonable men might not agree in their conclusions, a jury question is presented. [Citing cases.]"

See also McCullough v. Orcutt, 14 Ill App2d 513, at 517, 145 NE2d 109.

The instant case was tried on the theory that the defendant in operating the escalator in question was a common carrier, and the jury was so instructed. The instructions are not in the record, but the remarks of the trial judge as set out in the additional abstract of record so indicate. It is the law that a common carrier of passengers owes them the highest degree of care, and it is also the law that a person operating an escalator or an elevator in a building such as the one in the instant case is considered to be a common carrier and must use extraordinary care in and about his operation to prevent injuries to persons rightfully riding thereon.

Heffernan v. Mandel Bros., Inc., 297 Ill App 272, 17 NE2d 523, was the first case decided by a reviewing court in Illinois with reference to an escalator, and in that case the court held that the operator of an escalator is a common carrier, and at 278 cited with approval and quoted from McBride v. May Dept. Stores Co., 39 Ohio App 420, 177 NE 773, as follows:

> ". . . the plaintiff alleged in her petition 'that the moving part of said escalator, upon which customers are invited to stand, consisted of slats or cleats so arranged that narrow slots exist between these slats just wide enough to allow the heel of a lady's shoe to become wedged therein, so that, when descending, and the bottom is reached, and the customer attempts to step off, she finds it difficult, if not impossible, to do so, if her heel has become so wedged; further, that said slats or cleats had become defective by reason of long use, so that they were dangerous, all of which dangers and defects the defendant, in the exercise of ordinay care, should have known.' "

The court in McBride, after holding that the plaintiff had presented evidence tending to prove the material allegations of her petition, said that there was no difference in principle between the ownership and operation of an elevator and an escalator, and that it was the duty of a storekeeper owning and operating such an escalator to exercise the highest degree of care in its management and operation. The Heffernan case also cited and quoted from Petrie v. Kaufmann & Baer Co., 291 Pa 211, 139 A 878, in which case the plaintiff—a customer in the store—stepped on an escalator, and had been carried a short distance when the escalator momentarily stopped and then started forward with such a sudden and violent jerk as to throw her down, causing her head and body to strike forcibly against the moving stairway. In that case the court affirmed the judgment for the plaintiff, and said:

> ". . . Hence the rule that an elevator is deemed a common carrier applies equally to an escalator. While a carrier is not an insurer of the safety of the passengers, he is bound to exercise the highest practical degree of care for their safety, and where a passenger is injured through some defect in the means of transportation or the manner of operation, the burden is upon the carrier to show it could not have been prevented by human foresight. 'But though in legal contemplation, they [common carriers] do not warrant the absolute safety of their passengers, they are yet bound to the exercise of the utmost degree of diligence and care. The slightest neglect against which human prudence and foresight may guard, and by which hurt or loss is occasioned, will render them liable to answer in damages. Nay, the mere happening of an injurious accident, raises, prima facie, a presumption of neglect, and throws upon the carrier the onus of showing it

did not exist.' Laing v. Colder, 8 Pa 479, 481, 482 (49 Am Dec 533). [Other cases cited.]"

In the Heffernan case the court approved the rule laid down in the McBride and Petrie cases.

In Springer v. Ford, 189 Ill 430, 59 NE 953, an elevator case, the court said:

> "When a passenger is injured by reason of the giving way of some portion of the machinery or appliances by which the elevator is operated, the presumption of negligence from such breaking, unexplained, arises. In New York, Chicago and St. Louis Railroad Co. v. Blumenthal, 160 Ill 40, we say on page 48: *'The happening of an accident to a passenger during the course of his transportation raises a presumption that the carrier has been negligent. The burden of rebutting this presumption rests upon the carrier.* Undoubtedly, the law requires the plaintiff to show that the defendant has been negligent. But where the plaintiff is a passenger, a prima facie case of negligence is made out by showing the happening of the accident. If the injury to a passenger is caused by apparatus wholly under the control of the carrier and furnished and applied by it, a presumption of negligence on its part is raised.' " [Emphasis supplied.]

In Carson v. Weston Hotel Corp., 351 Ill App 523, 115 NE2d 800, an elevator case, the court cited with approval Springer v. Ford, 189 Ill 430, 59 NE 953, and said:

> ". . . Plaintiff was rightfully a passenger in the elevator and Weston was his common carrier. The accident happened, when the elevator gave way while he was being transported. These facts raised the presumption of negligence on the part of Weston, which then had the burden of rebutting the pre-

sumption by a showing of extraordinary care and diligence."

The same rule was laid down in Cobb v. Marshall Field & Co., 22 Ill App2d 143, 159 NE2d 520.

In the instant case we apply the rule that where an accident occurs to a passenger on a common carrier, the mere happening of an injurious accident raises prima facie a presumption of negligence, and the defendant then has the burden of rebutting the presumption by a showing of extraordinary care and diligence. The record shows that the plaintiff wore a shoe with a narrow heel. The fact that shoes with heels of that type are now generally worn is common knowledge.* The defendant is charged with that knowledge. A photograph of the escalator on which the accident occurred was also introduced in evidence, as was testimony with reference to the width between the wooden slats. The defendant must be charged with the knowledge that a shoe with a heel of the type worn by plaintiff could slip between the slats and could cause her to fall. When the plaintiff, under those circumstances, proved that an accident occurred to her because her heel slipped between the slats of the escalator, a presumption was raised that the defendant was negligent. In order to rebut that presumption the defendant must introduce evidence showing extraordinary care and diligence. The defendant introduced no such evidence.

The defendant had purchased the store from Mandel Brothers on August 18, 1960. The instant accident occurred on November 29, 1960. James Gunderson, who was assistant chief engineer of Wieboldt's at the time of the accident, testified that he had been previously employed by Mandel's from 1936 until the store was

---

* The plaintiff in the instant case testified that the shoes she wore at the time of the accident had been purchased from the defendant.

sold to defendant. He testified as to the physical setup of the escalator on which the accident occurred, describing the steps, treads and the distance between the slats. He testified that he had originally begun working for Mandel's in 1936; that while there were some gaps in his employment, from the time he first saw the escalator in 1936 there had been no changes made in the width or height of the treads. This was the only testimony introduced by defendant to rebut the presumption raised in favor of the plaintiff. It is not sufficient to make the disputed question of the alleged negligence a matter of law and not one of fact.

Negligence is the omission to do something which a reasonable man guided by those ordinary considerations which ordinarily regulate human affairs would do, or the doing of something which a prudent and reasonable man would not do. L. Wolff Mfg. Co. v. Wilson, 152 Ill 9, 38 NE 694. In Hack v. New York, C. & St. L. R. Co., 27 Ill App2d 206, 169 NE2d 372, the court said:

> "Negligence is generally 'a mixed question of law for the court and fact for the jury, and negligence cases in which a nonsuit may be allowed or a verdict may be directed are exceptional. On a motion for nonsuit all conflicts in testimony . . . must be resolved in favor of the plaintiff.' 38 Am Jur Negligence, sec 344; Kennedy v. Swift & Co., 234 Ill 606, 611, 85 NE 287. Ordinarily in determining as to whether conduct is negligent or not negligent in the light of the foreseeability of the results which occurred, the question is one which a jury may on its own general knowledge resolve without the benefit of expert testimony."

The trial court properly overruled the motion for a judgment notwithstanding the verdict.

In the majority opinion the court cited and quoted from Fier v. Chicago Orpheum Co., 295 Ill App 247, 14 NE2d 860, which is totally inapplicable here since it was

336

a case involving the question of whether the defendant had actual or implied notice that a rubber ball upon which the plaintiff tripped had been left on a stage. The court in that case discussed the rule that in cases of this character the evidence must establish either that the defect was actually known to the defendant or that the same existed for a sufficient length of time prior to the injury that the defendant in the exercise of reasonable care would or should have known it. In the case before us there was evidence that the defendant knew of the two conditions which caused the accident.

The majority opinion also cites and quotes from McQuillan v. City of New Orleans (La App), 18 So2d 218 (1944). We do not agree with the broad statement from that case quoted in the majority opinion and it is necessary to point out that the case was not one involving a passenger on a common carrier, and the only duty imposed upon the defendant was that of ordinary care.

The majority of the court takes the somewhat extraordinary view that the cases cited in the dissent are not applicable because the accident was not exactly the same type as the accidents which occurred in the cited cases. If the rule is to be that a case is not applicable unless it is a case which has exactly the same facts as the one to which it is sought to be applied as an authority, then we are making a revolutionary change in the application of the case law. The majority theory apparently is that unless there is an actual breaking or collapse or disruption in the use of an escalator, the common carrier rule does not apply. The true rule is that if the proprietor of the escalator was negligent with respect to its construction and maintenance or with respect to the manner in which it was operated at the time of the injury, it is sufficient. 13 CJS Carriers, § 768. In New York, C. & St. L. R. Co. v. Blumenthal, 160 Ill 40, 43 NE 809, a case dealing with a common carrier, the court said, at page 48:

337

"Being a passenger, appellee was not chargeable with notice of defects in the construction or condition of the cars. 'As to the selection of suitable machinery and cars, the fitness of the road both as to manner of construction and materials used, and in the use of all appliances adopted for the government or moving of trains, and as to the retention of competent and faithful servants, the carrier of passengers is obligated to use the highest reasonable and practicable skill, care and diligence.' (Chicago and Alton Railroad Co. v. Pillsbury, 123 Ill 9; Pennsylvania Co. v. Roy, 102 US 455.)"

The court further stated:

". . . But, where the plaintiff is a passenger, a prima facie case of negligence is made out by showing the happening of the accident. If the injury to a passenger is caused by apparatus wholly under the control of the carrier and furnished and applied by it, a presumption of negligence on its part is raised. [Citing cases.] Proof that plaintiff was a passenger, that the accident happened, and that the injury was inflicted, imposes upon the carrier the duty to explain or account for the accident, and to prove that it resulted from a cause for which the carrier should not be held responsible. . . . The circumstances of exculpation are its matter of defense. . . ."

The court further held that "Whether or not the defendant offered such explanation of the accident as to relieve itself from the charge of negligence, and whether or not the plaintiff exercised due care for his own safety, were questions of fact for the jury, . . ." See Springer v. Ford, 189 Ill 430, at 436, 59 NE 953.

In a footnote in the majority opinion it is said:

"While plaintiff's ⅝ inch heel would not catch in a ¼ inch space, a ¼ inch heel (frequently found

338

on women's shoes in the current mode) could do so. For a ¼ inch heel the ⅝ inch space would be safer and vice versa. One difficulty arising from this approach to the problem of escalator design is that at any given time there are heels being worn in a great variety of widths. Of this we take judicial notice."

The fact that the court takes judicial notice of the variance in widths of women's heels and of the alleged fact that certain types of heels could be caught in the more modern escalators does not make it a matter of law. It still remains a question for the jury, and unless we are going to eliminate the jury as a finder of fact, such matters should be submitted to them. In passing on a motion for judgment notwithstanding the verdict, the only question is whether there is any evidence, or reasonable inferences arising from the evidence, tending to prove the cause of action. On such a motion in a jury trial the court cannot weigh the evidence.

In the majority opinion the court finds that the trial court erred in overruling defendant's alternative contention for a new trial because of trial errors, and the court indicates that it considered that there were such errors in the record, but does not pass upon the question of whether or not those errors would be sufficient to require the court to allow the defendant a new trial. The errors upon which the defendant here relies are that the court erroneously admitted plaintiff's interrogatories 1 and 2, which requested the names and addresses and the date of injury of any persons who were injured on the subject escalator by "catching any part of their shoe or tripping on the slats or surface of the treads of said escalator in the 5-year period prior to the date of plaintiff's accident." The interrogatories were objected to by the defendant and the defendant later objected to the introduction of the interrogatories and answers into evidence. The answers to the interrogatories were

339

to the effect that there were prior accidents on the escalator during the period when the store was owned by Mandel Brothers, "based upon hearsay information." The defendant further answered that no records were available prior to October 1, 1956, and that since 1956 there were, as the defendant learned through hearsay information, eleven accidents. The names and addresses of the parties and the times of the accidents are also given. The answer to the interrogatory indicates that four accidents had occurred in 1959 and 1960. The defendant in its brief points out that it has been frequently expressed by the courts in Illinois that evidence of other accidents by the same agency in the same condition is competent, not for the purpose of showing independent acts of negligence, but for the limited purpose of showing that the occurrence of such other accidents tends to show notice to the owner of such dangerous agency. In its brief defendant objects to the introduction of the interrogatories and answers on the ground that they do not establish that it had knowledge or notice that the subject escalator was in an unsafe condition at the time of the accident. The defendant also argues that they should not have been admitted because there was no showing that the defendant had notice of the danger to the plaintiff at the time of the accident since there is nothing to indicate that the defendant actually acquired any knowledge of these accidents from the time it took over the store until the date of the instant accident. That is not a necessary requirement for their admission. City of Chicago v. Jarvis, 226 Ill 614, 80 NE 1079. It is not reasonable to hold that when defendant took over the store it walked blindly into a situation about which it knew nothing. Gunderson, the engineer, was in close contact with the escalators and he remained as defendant's employee. It is not reasonable to suppose that when each accident

occurred Gunderson became blind and deaf. The admission of the interrogatories and answers was unnecessary to make a prima facie case for plaintiff. The admission of the interrogatories and answers, if error at all, was not such an error on the part of the trial court as would require a new trial.

The defendant also argues that prejudicial error resulted from the introduction in evidence of a photograph showing replacement of the old escalator by a new one with metal treads. The exhibit was admitted in evidence over defendant's objections. Plaintiff's Exhibit No. 9 was a picture portraying the new metal replacement escalator. The picture also prominently displays the following large printed sign on the temporary wall next to the escalator: "NEW ESCALATOR, SWIFT SMOOTH SA—" The defendant argues that the letters "SA—" leave no doubt that the word was "SAFE" and that from that exhibit the jury could draw an inference that the escalator which was replaced was not swift, smooth, or safe, and consequently, the exhibit was so prejudicial that it would require the court to allow the defendant a new trial. The defendant argues that the mere evidence of change or repairs made subsequent to an accident is admissible in a negligence case, but it does admit that there are certain exceptions to the rule. The plaintiff cites many cases where such evidence was admissible. There are many cases on this subject and each one must be determined on the basis of the facts therein.

Engel v. F. W. Woolworth Co., 213 F2d 482, was a suit brought for injury to a child whose fingers were caught between the moving tread and comb plate of an escalator in defendant Woolworth's store. The defendant impleaded as a third-party defendant the Otis Elevator Company, which had manufactured and installed the escalator and contracted to maintain and service it. Evidence was introduced over the objection of Woolworth

that after the installation of the escalator in 1938 Otis started to manufacture and install a new type of escalator with a new comb plate in which there was a smaller distance between the treads, and that Woolworth had caused forty-four escalators of this new type to be installed in its other stores throughout the country. The court instructed the jury that they should not infer proof of negligence on the part of Woolworth from the fact that later models came out with alleged improvements. The court held that such evidence was properly admissible when the jury was cautioned as it was in the case in question.

In the instant case, while, as has been pointed out, no instructions appear in the record, the plaintiff alleges that the defendant tendered—and the court at its request gave—an instruction based on the Engel case, and that consequently the evidence was properly admitted. It is apparent from the additional abstract that the Engel case was cited in order to convince the trial court that the photograph should be admitted. It is also apparent from the additional abstract that the defendant gave an instruction of the same character as the one given in the Engel case. In its reply brief defendant argues that the Engel case had nothing to do with replacement and it is completely dissimilar from the instant case. With that contention we cannot agree. The trial court's refusal to grant a new trial to the defendant on the basis of alleged error in admitting the photograph must be sustained. Dallas v. Granite City Steel Co., 64 Ill App2d 409, 211 NE2d 907; Hecht Co. v. Jacobsen, 180 F2d 13.

The defendant also argues that the plaintiff's cross-examination of the physician who testified in favor of the defendant was so abusive and prejudicial that the court must reverse the judgment for the plaintiff. Whether the examination of the physician fell within

such characterization is not material; during plaintiff's examination of the defendant's witness the defendant's counsel sat silent and made no objections, and in fact, went into the same subject in redirect examination. Subsequently, in recross-examination by the plaintiff the plaintiff again attacked the integrity of the physician. Again, counsel for defendant sat silent. At one place the court intervened and indicated that the examination was, in its opinion, improper. Again, counsel for defendant sat silent. It is a well understood rule of law that in order to argue a question in a court of review with reference to improper conduct of an attorney, the question must have first been raised in the trial court. This was not done, and the defendant has waived its right to question the propriety of the cross-examination of the physician. It cannot be said that the defendant did not have a fair trial. The questioning does not fall within the rule laid down in Belfield v. Coop., 8 Ill2d 293, 134 NE2d 249, or any of the other cases cited by the defendant.

The defendant also complains that the verdict awarding damages of $10,000 to the plaintiff was so excessive as to require a reversal. There is testimony in the record that the attending physician found that the plaintiff had a traumatic compression of the nerve roots emanating from the cervical and upper dorsal spine which resulted in numbness of the left forearm which was still present at the time of trial, and that such injuries were permanent. There was also testimony that there were three areas of thrombophlebitis in the left leg which caused swelling and impairment of function.

In Barango v. Hedstrom Coal Co., 12 Ill App2d 118, 138 NE2d 829, the court said:

> ". . . There is no precise rule by which an award
> of damages can be fixed in an action for personal

injuries because compensation for them does not lend itself to mathematical computation. In the case before us, the question of damages involves no question of the weighing of evidence. The only question presented to us is whether the jury on the evidence before them could have returned the verdict in issue. Here the trial court denied the motion for a new trial, and the denial by the trial court of a motion to set aside a verdict claimed to be excessive is entitled to weighty consideration. The responsibility rests upon a trial court to carefully consider the evidence in the case before it, and in a proper case where the verdict is excessive, to either enter a remittitur or grant a new trial. There is nothing in the record to indicate passion or prejudice on the part of the jury. The question before us is as to whether or not the total amount of the verdict falls within the necessarily flexible limits of fair and reasonable compensation or is so large as to shock the judicial conscience."

In the instant case the verdict was not excessive.

The trial court in the instant case properly overruled defendant's post-trial motions for judgment notwithstanding the verdict and for a new trial. Finding no error in the record, the judgment of the Circuit Court of Cook County should be affirmed.