THE CHICAGO EXCHANGE BUILDING COMPANY

*v.*

NELS NELSON.

*Opinion filed June 19, 1902.*

1. ELEVATORS—*parties operating passenger elevators in buildings are carriers.* Parties owning or operating passenger elevators in buildings are carriers of passengers, and must use the highest degree of care for their safety that is practically consistent with efficient use and operation of the elevators.

2. SAME—*duty of exercising care for passenger's safety is not intermittent.* Passengers upon an elevator must rely for their safety upon the efficient management thereof by the conductor, and the duty which the latter owes toward such passengers is constant.

3. SAME—*what does not preclude recovery for injury in elevator.* If a person going down in an elevator intends to get off at the ground floor but has not communicated his intention to the boy in charge, the fact that he attempts, by mistake, to leave the car at the second floor while the car is stationary and the door open, does not preclude his recovery for an injury, where the boy started the elevator down without closing the door or ascertaining whether any one was getting off.

4. SPECIAL INTERROGATORIES—*when special interrogatory is properly refused.* A special interrogatory reading, "Was the defendant guilty of negligence causing the injury in this case?—and if so, in what did such negligence consist?" is properly refused.

*Chicago Exchange Building Co.* v. *Nelson,* 98 Ill. App. 189, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

This is an action on the case for personal injuries, begun in the superior court of Cook county. Upon the trial a verdict was rendered for appellee in the sum of $2000, and judgment entered thereon. Upon appeal to the Appellate Court the judgment was affirmed, from which judgment this appeal is prayed.

Upon the trial below it appeared that on October 3, 1896, appellee entered the elevator of appellant, in the Chicago Stock Exchange Building, on the eighth floor, for the purpose of being transferred to the ground floor. At the time he entered the elevator he said nothing to the elevator conductor as to his destination. He admitted that he knew it was the custom when any passenger intended to get off at any intermediate floor to notify the conductor, and that in case he did not so notify him, then the elevator conductor would be justified in believing that he intended to go to the bottom floor. When the elevator approached the second floor some one cried out "down," and the elevator conductor brought his elevator to a stop and threw open the door. Appellee, observing the elevator directly opposite him, on the other side of the corridor, standing on a level with the floor, with the door open and people getting out, and a man in uniform similar to that of an elevator starter standing by the elevator, supposed the elevator had reached the street floor. He thereupon started to go out of the elevator, and just as he was in the doorway the elevator conductor suddenly started the elevator downward without closing the door, although he did start to close the door at about the same time he started the elevator. This door was upon the grating that enclosed the elevator shaft, and not upon the cage of the elevator. The plain-

tiff got both feet upon the edge of the floor of the building, but as the elevator started one foot slipped forward and extended out on the floor of the building and the other foot remained on the ledge of the floor of the building.  The plaintiff, as he felt himself falling, grabbed hold of some part of the elevator cage to support himself, and as the elevator descended, the cross-piece at the top of the door in the elevator struck his leg a few inches above the knee and the compression broke the bones of his leg.  Before starting to go out he did not look to see whether the door was closing or not—he did not pay any attention.  He testified: "When the elevator boy threw the door open to the elevator, and I thought it was the lower floor, I walked straight out without hesitation, not thinking there was any danger."

It is contended on the part of the appellee that not only was the starting of the elevator without first closing the door negligence, but it was also negligence to start it while the appellee was in or just entering the door.

ALEXANDER CLARK, for appellant.

M. V. GILBERT, and PLINY B. SMITH, for appellee.

Mr. JUSTICE RICKS delivered the opinion of the court:

It is first urged by appellant that the court erred in refusing to instruct the jury to find the defendant not guilty, for the reason there was no negligence shown on the part of the defendant, and that the evidence shows conclusively that the accident was caused by the failure of the plaintiff to use due care for his own safety.

Plaintiff being upon an elevator of the defendant used for the carriage of persons, the law is well settled that the defendant was bound to exercise the highest degree of care, skill and diligence practically consistent with the efficient use and operation of the elevator for the plaintiff's safety.  The testimony of appellant tended to prove that when the second floor of the building was

reached the elevator was stopped and the door leading thereto was opened by the boy in charge. Appellee, under the mistaken impression that he had arrived at the floor he desired to reach, and in conformity to the implied invitation of the open door to depart from the elevator, stepped upon the edge of the floor of the building in an attempt to alight. At that moment the boy in charge, without first closing the door and without waiting to see if the plaintiff was about to alight, or if the lowering of the elevator, by reason of the door being open, would imperil his safety, caused the elevator to descend, by reason whereof the plaintiff's injuries were occasioned. Appellant contends that appellee, by his conduct, led the elevator boy to the conclusion that he (appellee) would not leave the elevator until the ground floor was reached, and therefore "the conductor need not take any further care of him, so far as his getting out of the elevator was concerned, until he got to the bottom." We are aware of no law by which a carrier of persons, when once having secured a passenger in its conveyance, may so operate its conveyance that, no matter how negligent it may be, the passenger cannot recover for injuries so received unless by some fortuitous chance the accident occurs at the passenger's destination. Passengers in an elevator must rely for their safety upon the efficient management of the conductor thereof. Their lives and safety are entrusted to his care, and he will be bound to the highest degree of care, skill and diligence practically consistent with the efficient use and operation of such conveyance. Nor is this duty intermittent, but it remains a constant duty owing to the passengers as long as they remain such. When the door was thrown open in such a way as to invite passengers to alight, it was not appellee's duty to stop, listen or make an examination before departing from the elevator. He had a right to assume that the appellant would perform its full duty toward him. (*Tousey* v. *Roberts*, 114 N. Y. 312;

197—22

21 N. E. Rep. 399.)   And it was immaterial that he did not inform the elevator boy that he was about to alight. If the boy had been in the exercise of that degree of care imposed by the law upon him, the jury might well find, from the evidence, that he would have discovered appellee in the act of alighting before the elevator was started in its descent.   We have held that "persons operating elevators are carriers of passengers, and the same rules applicable to other carriers of passengers are applicable to those operating elevators for raising and lowering persons from one floor to another in buildings." (*Hartford Deposit Co.* v. *Sollitt*, 172 Ill. 222.)   And in the case of *Chicago West Division Railway Co.* v. *Mills*, 105 Ill. 63, this court, speaking through Mr. Justice SCHOLFIELD, said (p. 67): "It was of no consequence whether the car was stopped at the instance of the plaintiff or not, since the act of stopping was productive of no injury and is in no respect complained of.   It is sufficient while the car was stopped parties were getting off, and the plaintiff, while attempting also to do so with due care, was injured by reason of the negligent starting of the car by the defendant's servants.   Nor could it be material to determine whether plaintiff asked or obtained permission of the defendant or its servants to alight.   The car being stopped, from whatever cause, at a place where passengers were in the habit of alighting, she had the undoubted right to alight without making any request or obtaining any permission in that regard, and if the defendant's servants knew or by the exercise of due care would have known of it, it was negligence on their part to start the car before she had a reasonable time in which to alight."

The evidence clearly tending to show due care on the part of appellee, negligence on the part of appellant and the resulting injury to appellee, it was not error to refuse the peremptory instruction.

It is next contended that the court erred in giving the third instruction for plaintiff, which was:

"The court instructs the jury that even if the plaintiff made a mistake and was alighting from the elevator at a floor which was not his destination, this fact will not, of itself, as a matter of law, prevent his recovering in this case; but if you believe, from the evidence, that under the instructions of the court the plaintiff, while attempting to alight from the elevator, was exercising ordinary care for his own safety while so doing, and if you further believe, from the evidence and under the instructions of the court, that the defendant was guilty of negligence as charged in the first count of the declaration, then you should find in favor of the plaintiff, if such negligence caused injury to the plaintiff as charged in that count."

The complaint made is, that the instruction ignored the exercising by the plaintiff of ordinary care for his safety before attempting to alight from the elevator, in that it would take away from the jury any consideration of the plaintiff's mistake in alighting at the wrong floor. As we have shown, appellee had the undoubted right to alight at any of the usual stopping places of the elevator, and if the appellant, by the exercise of such care as the law requires, would have known that appellee was about to alight, it was negligence on its part to start the elevator before he had a reasonable time to do so.

It is next contended that the court erred in refusing to give appellant's second interrogatory, which was as follows: "Was the defendant guilty of negligence causing the injury in this case?—and if so, in what did such negligence consist?" This special interrogatory was properly refused, for it was not restricted to those ultimate facts upon which the rights of the parties directly depended, but sought an opinion on probative facts. *Chicago and Northwestern Railway Co.* v. *Dunleavy*, 129 Ill. 132.

We are of the opinion that the record contains no material error, and the judgment of the Appellate Court will therefore be affirmed.            *Judgment affirmed.*