Bridget Heffernan, Appellee, v. Mandel Brothers, Inc., Appellant.

Gen. No. 39,945.

Heard in the second division of this court for the first district at the February term, 1938. Opinion filed November 17, 1938.

ALTHEIMER, WOODS & SMITH, of Chicago, for appellant; A. B. MANION and LEWIS L. LEVIN, both of Chicago, of counsel.

JAMES F. LYONS, of Chicago, for appellee; ELWYN E. LONG, of Chicago, of counsel.

MR. JUSTICE JOHN J. SULLIVAN delivered the opinion of the court.

This appeal seeks to reverse a judgment for $350 rendered against defendant, Mandel Brothers, in an action brought by plaintiff, Bridget Heffernan, for damages for personal injuries claimed to have been received while she was a passenger on an escalator in defendant's store.

After alleging that she became a passenger on the escalator for the purpose of being carried from one floor to another, plaintiff's complaint averred:

"That while plaintiff was such passenger as aforesaid, and while she was at all times in the exercise of due care for her safety, the defendant by its servants and agents, so negligently and carelessly managed and operated its said escalator, upon which the plaintiff was a passenger, that said escalator became out of order and vibrated violently.

". . . That the said escalator used by the Defendant Company for the carrying of customers from one department of the store to another upon another floor was improperly constructed and improperly installed, all of which was unknown to the plaintiff, and while plaintiff was a passenger upon said escalator then and there in said store for trade, the said escalator had some defect in its construction and installation and in consequence of and by reason of said defect, that the plaintiff while then and there in the exercise of due care and caution for her safety, while a passenger upon said escalator, and as a customer in said store, was thrown violently and forcibly upon her back and was bruised and injured. . . ."

No evidence was presented on the trial of this cause in support of the allegation in the paragraph of the complaint last above quoted, that "the said escalator had some defect in its construction and installation and in consequence of and by reason of said defect . . . plaintiff . . . was thrown violently and forcibly upon her back."

Plaintiff testified that on April 8, 1936, she went into Mandel Brothers' department store, at Madison and State streets, Chicago; that she walked down the stairs to the first subway to make a purchase; that "I wanted to get up on the main floor and I stepped onto the escalator"; that "I stood on the escalator as I usually did"; that "I was up about the third step, I should judge, and it started to vibrate, and it pushed

me from one side to the other, and then it gave some kind of a jerk and threw me off my feet and . . . I fell backwards . . . an employee of the store . . . was on the escalator at the time I was on there . . . he ran . . . I screamed when I fell, I hollered and he grabbed me . . . this young man held onto me . . . he tried to get me on my feet, which was a hard thing to do under the conditions''; that ''I must have been half way up the steps'' before the escalator stopped; and that she had frequently ridden on escalators before and was familiar with their operation.

Harry Wolf, Jr., who was in the employ of defendant at the time of plaintiff's injury but who was not at the time of the trial, testified that he was on the escalator at the time the accident occurred; that there was another man on the escalator between him and plaintiff; that he did not see her fall or know what caused her to fall, but that there was no unusual motion of the escalator at the time she fell; and that the escalator was operating smoothly and ''to the best of my knowledge it operated O.K.''

Felix Bozwick testified that he was employed by Mandel Brothers as a stockman; that ''at the time I was taking the escalator from the first subway to the first floor, and I just got in on the first step of the escalator, I saw a lady on the front of me . . . she was starting to walk from one step to another one, but she didn't step right on the steps, she stepped . . . on the edge . . . of the steps, and fell on her back''; that he was about six or eight steps behind her and that ''she was moving''; that ''I jumped right away to that lady and helped pick her up . . . and another man came and helped me to get up with the lady and somebody stopped that escalator''; that ''the escalator had risen six or eight steps . . . right on the center between them floors'' before plaintiff fell;

that he did not notice "any jerking or wobbling of the escalator" from the time it ascended above the subway floor level until the accident to plaintiff happened; and that the escalator did not "wobble at any time from side to side" and it did not "jerk back and forth at any time."

Henry George Cleves, chief engineer for Mandel Brothers, testified that, immediately after the accident and before the escalator in question was again placed in operation, he and two assistants examined and tested same and found it to be in good operating condition and that when they started it a short time thereafter, it ran smoothly and in the customary manner. He further testified as to the construction and operation of the escalator that "the steps of the escalator travel, they average about ninety feet per minute"; that "there are two sets of rails" that hold the steps up; that "there is a rail that the step itself rides on . . . and then there is another set of rails that carry the step frames . . . then each step has on this rail four flange wheels, wheels that are similar to a railroad wheel, only smaller of course . . . that flange is what keeps the escalator on the rail, and keeps it traveling true . . . clearances on the escalator have to be held down fairly close because of the railings on the sides, otherwise it would skip if it were not held in pretty fine alignment"; that the steps of the escalator, when it is in operation, "could move sideways very, very little"; that "when the escalator is in operation, and in motion, it is physically impossible for the steps of same to jerk back and forth"; that "there naturally has to be enough clearance so that the wheels, the flange of those wheels do not bind the rails in any way . . . the result is that it must have . . . around one-thirty second of an inch clearance . . . that is the extent of the movement that it can have from one side to the other"; and that

it is impossible "for the rate of speed of the escalator to decrease or increase to any extent at all while it is in motion."

Albert J. Wells, a mechanical engineer employed by the Otis Elevator Company, which installed the escalator in question, testified substantially to the same effect as the witness Cleve as to the construction and operation of the escalator and that it was impossible for such escalator or any of its steps, when it was in operation, "to wobble from side to side" or to "jerk back and forth."

Defendant contends that the relationship of the parties was that of invitor-invitee and that under such relationship liability could only be imposed upon it for its failure to keep its premises in a reasonably safe condition. On the other hand plaintiff insists that it was defendant's duty to exercise the highest practical degree of care for the safety of passengers on its escalator. Plaintiff also insists that the owner and operator of an escalator should be required to exercise the same degree of care as the owner of a passenger elevator and that it has been repeatedly held in this State that since passenger elevators are common carriers the owners of premises wherein same are constructed and operated must exercise the highest degree of care for the safety of passengers riding therein. (*Beidler v. Branshaw*, 200 Ill. 425; *Walsh v. Cullen*, 235 Ill. 91; *Springer v. Ford*, 189 Ill. 430; *Steiskal v. Marshall Field & Co.*, 238 Ill. 92.) The rule as to the duty one owning and operating an elevator owes to a passenger riding in same, who is injured through some defect in its operating mechanism, is predicated upon the fact that a person riding in an elevator cannot possibly know or show, if such elevator gets out of control, what caused it to do so, while the owner being in sole control of the elevator and the machinery used in its

operation, an inference of negligence on the part of said owner arises out of the circumstances.

In so far as we have been able to ascertain no case has been presented to or determined by a court of review in this State involving an injury claimed to have occurred on or alleged to have been caused by negligence in the operation of an escalator and there is a rather sharp conflict in the authorities of other jurisdictions as to the degree of care that should be required of owners of establishments where accidents alleged to have been caused by negligence in the management and operation of escalators installed therein have been considered.

In *McBride v. May Department Stores Co.*, 38 Ohio App. 420, 177 N. E. 773, the plaintiff alleged in her petition "that the moving part of said escalator, upon which customers are invited to stand, consisted of slats or cleats so arranged that narrow slots exist between these slats just wide enough to allow the heel of a lady's shoe to become wedged therein, so that, when descending, and the bottom is reached, and the customer attempts to step off, she finds it difficult, if not impossible, to do so, if her heel has become so wedged; further, that said slats or cleats had become defective by reason of long use, so that they were dangerous, all of which dangers and defects the defendant, in the exercise of ordinary care, should have known." After holding that the plaintiff had presented evidence tending to prove the material allegations of her petition, the court there said at p. 775 of the last mentioned report:

"We further hold that there is no difference in principle between the ownership and operation of an elevator and an escalator. They are installed for the same purpose; the only difference being that one runs in a perpendicular fashion and the other at an angle of approximately forty-five degrees. Both are constructed for the benefit of customers of the owners.

Both are intended as inducements to prospective customers to visit the establishment of the owner. Undoubtedly the owner profits from the installation and operation of each. An innkeeper profits because of the supposed increased patronage of his inn due to the installation of such a conveyance as an elevator. A storekeeper profits due to the supposed increased patronage of his store by the installation of an escalator, which is simply a moving stairway. Both are taken into account by the proprietor and by the customers as part of the commodity bought or sold; in the one case, personal services, in the other, merchandise.

"We hold, therefore, that it is the duty of the storekeeper owning and operating such an escalator to exercise the highest degree of care in its management and operation, and that the common pleas court, in charging the jury that only ordinary care was required, committed reversible error." (This decision of the court of appeals of Ohio was affirmed by the Supreme Court of Ohio in 124 Ohio St. 264, 178 N. E. 12.)

In *Petrie v. Kaufman & Baer Co.*, 291 Pa. 211, 139 Atl. 878, defendant has a large department store on Smithfield street, Pittsburgh, occupying several floors of the building and, among other conveniences for its patrons and employees, has escalators in the nature of moving stairways, on which people stand and are carried from one elevation to another. Plaintiff's evidence, corroborated by two disinterested witnesses, was that on March 3, 1925, while a customer in the store, she stepped on an escalator to pass from the fifth to the fourth floor and had been carried about a third of the distance when the escalator momentarily stopped and then started forward with such a sudden and violent jerk as to throw her down, causing her head and body to strike forcibly against the moving stairway. There the court in affirming a judgment entered for plaintiff said at pp. 879, 880:

"As an escalator and an elevator perform the like service of conveying people from one elevation to another, they are subject to like duties and responsibilities. The passenger is at least as powerless to influence the action of the former as the latter. Hence the rule that an elevator is deemed a common carrier applies equally to an escalator. While a carrier is not an insurer of the safety of the passengers, he is bound to exercise the highest practical degree of care for their safety, and where a passenger is injured through some defect in the means of transportation or the manner of operation, the burden is upon the carrier to show it could not have been prevented by human foresight. 'But though in legal contemplation, they [common carriers] do not warrant the absolute safety of their passengers, they are yet bound to the exercise of the utmost degree of diligence and care. The slightest neglect against which human prudence and foresight may guard, and by which hurt or loss is occasioned, will render them liable to answer in damages. Nay, the mere happening of an injurious accident raises, prima facie, a presumption of neglect, and throws upon the carrier the onus of showing it did not exist.' *Laing v. Colder,* 8 Pa. 479, 481, 482 (49 Am. Dec. 533.) See, also, *Bickley v. Phila. & R. Ry. Co.,* 257 Pa. 369, 101 A. 654; *McBride v. McNally,* 243 Pa. 206, 89 A. 1131, 52 L. R. A. (N. S.) 259; *Meier v. Pennsylvania Railroad Co.,* 64 Pa. 225, 3 Am. Rep. 581. That this rule applies to elevators is expressly stated and the reasons therefor clearly set forth in the opinion of the court, by Justice (later Chief Justice) Brown, in *Fox v. Philadelphia,* 208 Pa. 127, 57 A. 356, 65 L. R. A. 214, and by Justice Kephart, speaking for the court, in *McKnight v. Kresge Co.,* 285 Pa. 489, 132 A. 575. See, also, *Riland v. Hirshler,* 7 Pa. Super. Ct. 384; 10 C. J. 1039. The description of the occurrence, in general language, as a sudden violent jerk of the escalator,

was sufficient (*Kleine v. Pittsburgh Railways Co.*, 252 Pa. 214, 97 A. 395) and, when plaintiff was injured thereby, created a prima facie presumption of negligence against the defendant. That such presumption may be rebutted by exculpatory proof is clear; whether it was or not in the instant case was for the jury.''

Although a different rule is enunciated in *Stratton v. Newberry Co.*, 117 Conn. 522, 169 Atl. 56, and *Fuller v. Wurzburg Dry Goods Co.*, 192 Mich. 447, 158 N. W. 1026, where accidents occurred on escalators under somewhat similar circumstances, we prefer to follow the rule announced in *McBride v. May Department Stores Co.*, and *Petrie v. Kaufman & Baer Co., supra,* that ''while a carrier is not an insurer of the safety of the passengers, he is bound to exercise the highest degree of care for their safety, and where a passenger is injured through some defect in the means of transportation or in the manner of operation, the burden is upon the carrier to show it could not have been prevented by human foresight,'' since this rule is in harmony with the established law of this State relative to the care required in the operation of passenger elevators by their owners.

Applying the foregoing rule, proof of the facts of the occurrence to plaintiff and of her injuries constituted a prima facie case of negligence and justified the verdict against defendant unless such prima facie case was overcome by proof showing that defendant was not at fault or that plaintiff's injury resulted from her failure to exercise ordinary care for her own safety or that her fall and injury did not occur in the manner stated by her. The question then presented is whether the mere statement by plaintiff that the step of the escalator upon which she was standing vibrated and jerked causing her to fall is sufficient to sustain the verdict upon which the judgment in this cause is based in view of all the other evidence in the record.

The two other witnesses who were on the escalator at the time of plaintiff's accident said that there was no unusual vibration or movement of same and the engineer who examined its operating mechanism while it was still stopped after plaintiff's injury and again after it was placed in operation, stated that he found no defect in said operating mechanism and that same was in good working order and ran in a normal manner. Both engineers testified that there could have been no movement of any step of the escalator from side to side of more than one thirty-second of an inch and that it was impossible for the escalator or any step thereof to move or jerk from back to front. In our opinion plaintiff's uncorroborated testimony that the step of the escalator on which she stood vibrated and jerked violently, causing her to fall, is insufficient to sustain the verdict and judgment when all the other evidence in the record showed that such step not only did not but could not "vibrate" or "jerk" as she said. We are impelled to hold that the verdict of the jury was clearly against the manifest weight of the evidence.

Other points have been urged but in the view we take of this cause we deem it unnecessary to discuss them.

For the reasons stated herein, the judgment of the municipal court is reversed and the cause remanded.

*Judgment reversed and cause remanded.*

FRIEND, P. J., and BURKE, J., concurs.