## Kathryn Mader, Appellant, v. Mandel Brothers Department Store, Appellee.

### Gen. No. 41,897.

Heard in the third division of this court for the first district at the October term, 1941. ▆▆▆▆ Opinion filed April 8, 1942.

ABRAHAM BROWNE, of Chicago, for appellant.

B. S. QUIGLEY, of Chicago, for appellee; EZRA L. D'ISA, of Chicago, of counsel.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

In a statement of claim filed in the municipal court of Chicago, Kathryn Mader alleged that on December 8, 1938, she was shopping in Mandel Brothers Department Store and that she fell and was injured, due to the presence of a foreign substance on an escalator on which she stepped for the purpose of riding from one floor to another. Defendant denied that there was any slippery substance on the escalator, or that it was negligent, and that if such substance was on the escalator it did not allow the same to remain there; that defendant did not know that any such substance was

on the escalator, and in the exercise of reasonable diligence could not have gained knowledge of the presence of any such substance. A trial before the court and six jurors resulted in a verdict finding defendant guilty and assessing damages at $450. The court allowed defendant's motion for a judgment *non obstante veredicto* against plaintiff for costs, to reverse which plaintiff has appealed.

Plaintiff was the only witness. At the time of the trial, she was 39 years of age and was employed as a bookkeeping machine operator by the city of Chicago. On December 8, 1938, she came to the store, accompanied by her sister and her niece, who was then 5 years of age. The plaintiff and her niece separated from plaintiff's sister. Plaintiff was to meet her sister on the main floor of the store at 5:30 p.m. At 5:15 p.m. plaintiff was shopping on the third floor. She desired to be carried on an escalator from the third floor to the second floor and walked to the escalator. She testified that as she put her right foot forward she slipped and went down four or five steps and finally gripped herself, managed to get to her feet and walked back up two or three steps to the floor from which she started; that she then started to walk and felt something sticking to the floor; that she put her hand down to her foot and took a substance off which was candied popcorn; that she did not notice the popcorn as she was walking on the third floor; that she did not observe her shoe at that time; that the first time she observed the popcorn was when she came back up after she fell; that she called the floor manager and informed him; that her stockings were torn; that her left knee was bleeding; and that the nurse in the store bandaged her knee. She testified further that in walking toward the escalator she did not observe any sticky substance on her shoe; that accompanied by her niece and sister she went home in a taxicab; that she visited a physician who had an office

in the neighborhood where she resided; that he washed and dressed her knee; that she remained in bed for four days; that she made three visits to the office of the physician, and that she feels a slight pain in her knee during damp weather. On cross-examination, witness testified that in approaching the escalator her niece was following behind her; that she looked at the steps as they moved along before she stepped onto them; that she did not see anything on the steps; that she descended with the escalator; that then she was "very naturally taken right off my feet"; that she fell in a sitting position; that she then walked back up the steps; that after she got off the escalator she noticed the substance on her foot; that it was on the sole of her left foot; that she did not notice anything on her feet while she was coming up the steps; that at the time she boarded the escalator she stepped forward with her right foot and "naturally as you bring your other foot forward, I slipped, and down I went"; that she slipped with her left foot; that at the time she slipped her left foot was on the escalator; that after she got off the escalator on the third floor she found the candied popcorn, which was "just a kernel" and that it was "brown and squashed." Asked whether she knew if the popcorn got on her shoe before she stepped on the escalator or after, she answered, "Well, I feel quite certain it must be correct, after I stepped on the escalator. I know definitely it wasn't on my shoe before or I would have fallen before." Asked whether the popcorn was on the escalator step or on the platform leading to the escalator, she answered, "On the escalator, not on the platform." She stated she did not know how the popcorn became attached to the escalator. Plaintiff was the only person on the escalator. The parties stipulated that if the physician took the stand, he would testify that he was paid $6 for his services and that such was a reasonable and customary charge. In urging that

the court erred in sustaining defendant's motion for a judgment *non obstante veredicto,* plaintiff states that whether the substance was on the escalator steps for such a period of time that defendant, in the exercise of ordinary care would and should have removed it, was a question for the jury. Plaintiff states that in considering defendant's motion, the court had no right to weigh the evidence. Plaintiff asserts that an escalator is a common carrier and that the operator of an escalator owes passengers using the same, the highest degree of care. Both escalators and elevators are installed to enable people to proceed from floor to floor of a building without climbing stairs. The owners and operators of elevators are required to exercise the highest decree of care and diligence for the safety of the passengers. They are common carriers. In *Heffernan v. Mandel Bros., Inc.,* 297 Ill. App. 272, we held that the owner and operator of an escalator is required to exercise the same degree of care for the safety of the passengers as the owner and operator of an elevator. Plaintiff does not contend that she was injured because of any mechanical defect in the escalator or because of any negligence in operating its mechanism. There is doubt as to whether the kernel of popcorn was on the escalator. She did not see it or feel it until she returned to the third floor. There is no showing that the popcorn was on the steps or that the defendant knew or should have known of its presence. We are of the opinion that the court was right in deciding as a proposition of law that plaintiff did not make out a case.

Therefore, the judgment of the municipal court of Chicago is affirmed.

*Judgment affirmed.*

HEBEL and KILEY, JJ., concur.