Eugene **BAYNUM**, Plaintiff-Appellee,

v.

**CHESAPEAKE AND OHIO RAILWAY COMPANY**, Defendant-Appellant.

No. 71–1814.

United States Court of Appeals, Sixth Circuit.

March 10, 1972.

James L. O'Connell, Cincinnati, Ohio, for defendant-appellant; Lindhorst & Dreidame, Cincinnati, Ohio, of counsel.

Philip J. Schneider, Cincinnati, Ohio, for plaintiff-appellee; Jerome T. Anderson and O. C. Adamson, II, Minneapolis, Minn., on brief, Waite, Schindel, Bayless & Schneider, Cincinnati, Ohio, DeParcq, Anderson, Perl & Hunegs, Minneapolis, Minn., of counsel.

Before EDWARDS, CELEBREZZE, and McCREE, Circuit Judges.

McCREE, Circuit Judge.

The railway company appeals from a judgment entered upon a jury verdict in the amount of $47,500 in favor of Eugene Baynum, one of its employees. Appellee brought suit under the Federal Employers' Liability Act, 45 U.S.C. § 51 et seq., alleging that he suffered permanent injury on March 31, 1967, as a result of an unsafe condition which his employer negligently allowed to exist at his place of employment, Stevens Yard, in Silver Grove, Kentucky. The only evidence of the mishap indicated that Baynum was injured when he stepped on a split tie as he was alighting from a railroad car in the course of his employment. Baynum and another employee who had been working with him testified that the tie was split and that one side was two or three inches higher than the other. Baynum testified that the center of the tie was "all rotted out," and that the tie was "dished out" in the center. Appellant has asserted five different grounds for reversal of the judgment. Only three of them require discussion.

Appellant first contends that it was error for the court to refuse an instruction it proffered:

I charge you that the defendant cannot be deemed guilty of negligence for a defect in its premises unless it had

actual or constructive knowledge of that defect. Therefore, unless the plaintiff establishes, by preponderance of the evidence, that the defendant had actual or constructive knowledge of any claimed defect in its premises, the plaintiff cannot recover, and your verdict must be in favor of the defendant, The Chesapeake and Ohio Railway Company.

Since this instruction was a proper statement of the law, Miller v. Cincinnati, New Orleans and Texas Pacific Ry. Co., 317 F.2d 693, 695 (6th Cir. 1963), appellant was entitled to have it, or one to the same effect, given to the jury. *See* Brown v. Addressograph-Multigraph Corporation, 300 F.2d 280, 282 (6th Cir. 1962). And the court's instruction on the issue of notice was unclear.[1] Nevertheless, since the jury believed plaintiff's version of the episode of injury, appellant either must have installed the tie in its defective condition, or it split and rotted after installation. If the former hypothesis is correct, the railway would clearly be liable for injury resulting from the hazard thus created. On the other hand, if the jury believed that the tie split and became rotten after installation, it was justified in concluding that the deteriorated condition developed over a period of time of sufficient length so that a reasonable inspection would have revealed the hazard before the accident. The jury was entitled to rely on common experience which teaches that railroad ties rot only over a considerable length of time. Accordingly, under these circumstances, we determine that appellant was not prejudiced by the court's refusal to give the proffered instruction or its equivalent that appellant could be held liable only if it had actual or constructive knowledge of the defect.

■ Appellant also contends that it was error for the court to permit plaintiff's counsel to suggest, in the absence

---

1. The pertinent part of his instructions stated:

Mention was made in argument that the railroad had no notice of the alleged defective condition. In this connection, if you find that in the exercise of ordinary care and in the discharge of its duties to provide employees with a safe place to work that the defendant had a duty to warn and/or repair a defective condition, before you find there was a violation of such duty, you must find that the railroad either knew or should have known of such defective condition.

However, if you find in the exercise of its duty to use ordinary care to provide a safe place to work the railroad had a duty to inspect its ties and walkways where car inspectors and others alighted to make sure they were safe, you may find such duty violated, regardless of whether or not the railroad knew or should have known of the defective condition.

Then, after having invited objections to his instructions pursuant to Fed.R.Civ.P. 51, he further instructed the jury:

THE COURT: You have been brought back because I made a mistake, and this was called to my attention. I want to attempt to correct it.

It occurred toward the last of the charge just before I got to the closing instruction. I was instructing you or giving you instruction which was prompted by the fact that mention was made in argument that the railroad had no notice of the alleged defective condition.

I told you that, if you find that in the exercise of its duty to exercise ordinary care to provide a safe place to work the railroad had a duty to inspect its ties and walkways, you may find such duty violated regardless of whether or not the railroad knew or should have known of the defective condition. In other words, I left it up to the jury to determine as a matter of fact whether the railroad in the exercise of its duty to provide a safe place to work had a duty to inspect.

I should not have done that because, as a matter of law, the railroad has a duty to inspect in the exercise of its continuing, nondelegable duty to provide a safe place to work. In determining whether or not that there was a failure to perform that duty to inspect, it is not pertinent, and therefore not necessary, for the jury to consider whether the railroad knew or should have known about the existence of the defective condition about which you have heard testimony.

When anything is a matter of law, the jury has to accept that. So, you do not

of expert testimony on the issue, that any award for future damages should be discounted to present value by using a specific discount rate of five percent. In his opening argument at the completion of the case, plaintiff's counsel stated:

> The Court will tell you this must be reduced by the highest safe interest rate since your award—compensating him for his loss will be made now to take care of him for the next 17 years; so therefore, you must reduce it at the interest rate it could be invested at safely. And at five percent that figure comes to $104,000 on a present award. So this then must not be the award, but the reduced figure at a safe interest rate as you see fit.

Arguably, counsel merely used the figure of five percent by way of illustration. But even if the jury believed that counsel was suggesting the use of a specific figure, we hold that appellant was not prejudiced thereby. The court's instruction made the duty of the jury clear:

> In order to make a reasonable adjustment for the present use, interest-free, of money representing a lump sum payment of anticipated future loss, the law requires that the jury discount at the highest safe interest rate, or reduce to its present worth, the amount of the anticipated future loss, by taking the highest safe interest return which the plaintiff could reasonably be expected to receive on investment of the lump sum payment, together with the period of time over which the future loss is reasonably certain to be sustained; and then reduce, or in effect deduct from, the total amount of anticipated future loss whatever that amount would be reasonably certain to earn or return, if invested at the safe rate of interest

over such period of time; and include in the verdict an award for only the present worth—the reduced amount— of the total anticipated future loss.

And this court has observed that:

> Jurors are presumed to be intelligent people, generally aware, from today's economy and their own experience with it, of the earning value of money when placed in safe investments. While, indeed, more could have been said on the subject, if request had been made, we cannot say that the jury misunderstood the trial judge when he told them that for future loss of earning capacity they were to award only the "money value" of such loss and to award only such sum as would "compensate" for the plaintiff's loss of future earning capacity. They were aware that their verdict would be presently and immediately placing money in the hands of plaintiff as "compensation" for these future losses. Such was the reasoning of various state court decisions which have directly held that the evidence which the defendant claims was essential here was not a prerequisite to a jury's award of damages for loss of future earning capacity. (Citations omitted.) Pennsylvania R. R. Co. v. McKinley, 288 F.2d 262, 265 (6th Cir. 1961).

We therefore do not hold that the court's refusal to require expert testimony to establish the highest safe interest rate over a long period of time in the future was erroneous.

█ Finally, appellant contends that it was an abuse of discretion for the court to refuse to grant a new trial on the basis of newly discovered evidence. Fed.R.Civ.P. 59. At trial, appellant vigorously contended that the knee Baynum claimed had been injured upon alighting

---

have to determine—Well, I had better not go farther because to do so it might give undue emphasis to some part; and that is

not my intention. My intention is only to correct the mistake I made.

Now you can begin your deliberations.

**662**

from the railroad car was injured in a subsequent truck accident, and that it was this later injury that required surgery. Appellant unequivocally denied he had injured his knee in the truck accident. Following the trial, appellant was informed by one of its employees, Chester Henderson, that Baynum had spoken to him in the spring of 1968, and had stated that he had aggravated his old knee injury in a recent automobile accident. Appellant thereupon filed a motion for a new trial and supported it by affidavits from Henderson and other persons to prove its contention that it had no way of discovering the information before or during trial. In response, appellee filed an affidavit denying that the conversation had taken place during 1968, and asserting instead that appellee had talked to Henderson in the spring of 1967 when he spoke of injuring his knee at work.

The issue of the second accident was argued at some length at trial. Medical witnesses were examined about the recency of the injury to Baynum's knee. The police report of the automobile accident (which revealed no injury to Baynum) was introduced, and there was considerable evidence concerning the extent of Baynum's 1967 injury. Under these circumstances, we do not regard the refusal to grant a new trial as an abuse of the court's discretion:

> Newly discovered evidence will justify a new trial only if it is not only material but more than merely cumulative. The proposed new witness's testimony would tend merely to affect the weight and credibility of the evidence already considered and it is not of such nature to indicate that if added to other proof already in the case a different result would be probable. Thomas v. Nuss, 353 F.2d 257, 259 (6th Cir. 1965).

The judgment of the District Court is affirmed.