Edna M. SUAREZ et al., Plaintiffs-Appellants,

v.

TRANS WORLD AIRLINES, INC., et al., Defendants-Appellees.

No. 73–1688.

United States Court of Appeals, Seventh Circuit.

Argued April 11, 1974.

Decided June 18, 1974.

Rehearing Denied July 17, 1974.

Alan L. Unikel, Chicago, Ill., for plaintiffs-appellants.

Irving G. Swenson, Michael M. Lane, Chicago, Ill., for defendants-appellees.

Before SWYGERT, Chief Judge, FAIRCHILD and SPRECHER, Circuit Judges.

SPRECHER, Circuit Judge.

We are asked to consider a unique diversity case involving the standard of care required to be observed by an airline in the terminal toward a previously disabled victim confined to a wheelchair and attempting to return home.

I

On September 3, 1970, Mrs. Suarez, who was then in Chicago, suffered an angina attack and was admitted to Resurrection Hospital in Chicago. She and her husband were residents of Spring-

field, Virginia, he being employed as a law enforcement officer with the United States Bureau of Indian Affairs. Although Mrs. Suarez had been hospitalized on two previous occasions due to her angina condition, she had never suffered a heart attack.

On September 7, Mrs. Suarez' attending physician informed her that she had recovered sufficiently to return home but that she should refrain from becoming emotionally upset, should "take it easy," should not walk and should use a wheelchair for a few days. Mrs. Suarez reported this information to her husband who had remained at their home in Virginia.

In two separate telephone calls to the same agent of TWA in Washington, D. C., within fifteen to twenty minutes of each other, Mr. Suarez reserved a one-way first-class passage for Mrs. Suarez on flight 424 from Chicago to Washington; told the agent that his wife had been ill, was being released from the hospital and needed a wheelchair when she arrived at the airport; and informed the agent that the ticket would be paid for with an American Express card by Mrs. Suarez. The TWA agent told Mr. Suarez that "it would all be taken care of" and that Mrs. Suarez' ticket would be ready for her. Mr. Suarez reported these facts to Mrs. Suarez in the hospital.

TWA flight 424 was scheduled to leave O'Hare Airport about 4:45 in the afternoon. Mrs. Suarez was released from the hospital at 2:00 P.M. on September 7, was driven to the airport by a nurse, and arrived at the airport about 3:00 P.M. The nurse procured the assistance of TWA skycap Frederick Rolland who brought a wheelchair to the automobile where he and the nurse assisted Mrs. Suarez into the chair. Mr. Rolland wheeled Mrs. Suarez to the line in front of the TWA ticket counter and stayed with her until she reached the ticket agent, Judy Keri. He told Mrs. Keri to let him know when she was finished with Mrs. Suarez and he would

then return and take Mrs. Suarez out to the departure gate.

Mrs. Keri testified that after Mrs. Suarez identified herself, she confirmed that she had a reservation but she had no advance information about her being ill or that she would arrive in a wheelchair. She then prepared a ticket, took the American Express card from Mrs. Suarez and had Mrs. Suarez sign the receipt, but her signature did not match that of Mr. Suarez on the card.

Mrs. Suarez testified that Mrs. Keri said, "I can't take this card. It is not made out to you. I have no proof that you are Mrs. Suarez." Mrs. Suarez answered: "I just got out of the hospital. I have been ill. I have my card. I have proof I am Mrs. Suarez. I have used it many times before and I see no problem." Mrs. Keri said: "I don't know that your American Express bill is even paid." Mrs. Suarez replied: "Well, I even have proof of that." Mrs. Suarez said that Mrs. Keri was very irritated, became abusive and spoke in a louder than normal tone. A line had formed behind her.

According to Mrs. Keri, Mrs. Suarez then requested Mrs. Keri to telephone someone at American Express and ask that person to telephone her husband. Mrs. Keri telephoned someone at American Express but that person refused to check with Mr. Suarez. Mrs. Keri then sought the aid of her TWA supervisor, Mrs. Mary LeBaron, who explained to Mrs. Suarez that TWA could not issue the ticket.

Mrs. Suarez then asked Mr. Rolland to take her to a telephone to call her husband. Rolland noticed that she was crying when she spoke to her husband and he asked Mrs. LeBaron to help her, but apparently she did nothing to attempt to solve the problem.

Then as stated in plaintiffs' brief, "Mrs. Suarez was left to sit alone in the wheelchair in the crowded, noisy Labor Day lobby for almost two hours, not knowing what her status was."

In the meantime, Mr. Suarez called TWA and reached a supervisor in Philadelphia, who suggested a prepaid ticket which Mr. Suarez procured. The supervisor called Mr. Suarez back later and informed him that the prepaid ticket had reached O'Hare Airport but that TWA personnel could not find Mrs. Suarez. This was despite the fact that Mr. Rolland checked on Mrs. Suarez from time to time and, after Mr. Suarez had informed her of the prepaid ticket arrangement, he took her back to the general vicinity of the TWA ticket counter.

Finally about two hours later, Miss Carol White, a TWA ground hostess, saw Mrs. Suarez sitting alone in the wheelchair in the airport lobby and told her about the receipt of the prepaid ticket but that she had missed her flight. Hearing this, Mrs. Suarez stood up in the wheelchair, suffered a heart attack and collapsed. An ambulance was summoned and she was taken to the hospital.

A cause of action based upon negligence and wilful and wanton conduct resulted in a jury verdict in favor of TWA.

## II

The appeal is based solely on the failure to give certain, and the giving of certain other, instructions.

The district court refused to give the following instructions requested by the plaintiffs:

At the time of the occurrence in question, the defendant TWA was a common carrier. A common carrier is not a guarantor of its passengers' safety. But it has a duty to its passengers to use the highest degree of care consistent with the mode of conveyance used and the practical operation of its business as a common carrier by air.

It was the duty of the defendant . . . before and at the time of

the occurrence to use the highest degree of care for the safety of the plaintiff.

When a carrier is aware that a passenger is physically disabled or infirm so that the hazards of travel are increased as to her, it is the duty of the carrier to provide that additional care which the circumstances reasonably require.

Further, over objection of plaintiffs' counsel, the trial court gave the following instructions on contributory negligence:

When I use the expression "contributory negligence", I mean negligence on the part of the plaintiff which proximately contributed to cause the alleged injury.

It was the duty of the plaintiff, before and at the time of the occurrence, to use ordinary care for her own safety. That means it was the duty of the plaintiff to be free from contributory negligence.

### III

This is a diversity case and both sides concede that the law of Illinois governs.

The three instructions requested by the plaintiffs but not given are taken virtually verbatim from Illinois Pattern Jury Instructions. The instruction relating to the duty of care to be observed by a common carrier to its passengers is Instruction 100.01 of Illinois Pattern Jury Instructions, Civil (2d ed. 1971). The instruction relating to the additional care required to be observed by a carrier to a disabled or infirm passenger is Instruction 100.08. The "highest degree of care" instruction is Instruction 10.04 modified for the situation of a common carrier.

Supreme Court of Illinois Rule 239, Ill.Rev.Stat.1973, ch. 110A, § 239 provides in part:

Whenever Illinois Pattern Jury Instructions (IPI) contains an instruction applicable in a civil case, giving due consideration to the facts and the prevailing law, and the court determines that the jury should be instructed on the subject, the IPI instruction shall be used, unless the court determines that it does not accurately state the law.

The district court denied the three instructions because they "have to do with the duty of a common carrier." The court indicated that it was "relying primarily on the fact that [Mrs. Suarez] not only didn't have a ticket but never did get one" and "it wasn't the defendant's fault that she didn't get one . . . [i]t was her fault. . . ."

Instead of giving any "highest care" instructions, the court gave instructions on ordinary care and defined negligence as consisting of the failure to do something a reasonably careful person would do.

There is no Illinois case closely resembling the facts here, where the passenger was in a wheelchair provided by the common carrier and was, due to her physical condition known to the carrier, wholly subject to and in complete reliance upon the actions of the carrier for transportation to the aircraft and for interim care until she reached her destination.

A ticket for passage had been reserved for her before she was placed in the carrier's wheelchair and had been paid for before she suffered her heart attack. The Illinois Supreme Court has recently reaffirmed that payment of the fare is not a prerequisite to acquiring the status of a passenger.[1] In Katamay v. Chicago Transit Authority, 53 Ill.2d 27, 32, 289 N.E.2d 623, 626 (1972), the court said:

We hold that plaintiff was not required to be in physical contact with defendant's train in order to occupy the status of passenger. She was standing on the platform provided for boarding and alighting from defend-

---

1. *See also*, Petersen v. Elgin, A. & S. Traction Co., 238 Ill. 403, 87 N.E. 345 (1903).

ant's trains and was engaged in the "act of boarding" if, with intent to board the standing train and pay the required fare, she moved toward it for that purpose.

In *Katamay* the court discussed with approval Zorotovich v. Washington Toll Bridge Authority, 80 Wash.2d 106, 491 P.2d 1295 (1971), where the plaintiff was injured while waiting to buy a ticket to ride defendant's ferry, was not in the act of boarding and was, in fact, several hundred feet away from the ferry. The Illinois court quoted the following criteria from *Zorotovich:*

> The matters to be considered in determining the status as a passenger are: (1) place (a place under the control of the carrier and provided for the use of persons who are about to enter carrier's conveyance); (2) time (a reasonable time before the time to enter the conveyance); (3) intention (a genuine intention to take passage upon carrier's conveyance); (4) control (a submission to the directions, express or implied, of the carrier); and (5) knowledge (a notice to carrier either that the person is actually prepared to take passage or that persons awaiting passage may reasonably be expected at the time and place).

The factor which sharply distinguishes the present case from others is the disablement of Mrs. Suarez and her virtual captivity in the carrier's wheelchair, underscoring heavily the "control" element in the *Katamay-Zorotovich* criteria.

■ Under Illinois law even such conveyances as elevators [2] and escalators [3] are "common carriers of passengers . . . [the] operators [of which], upon the grounds of public policy, are required to exercise the highest degree of care and diligence . . . where human beings submit their bodies to their control. . . ." [4]

Here Mrs. Suarez "submitted her body" to the control of TWA when she was placed in the TWA wheelchair after being told by her doctor that "he did not want her to walk for several days . . . and this advice was given with some emphasis" (Defendant's Brief at 3) and was conveyed by both Mr. and Mrs. Suarez to TWA.

■ Under Illinois law, "[w]hen a common carrier knows that a passenger is affected by a physical or mental disability which increases the hazards of travel, a degree of attention should be bestowed on his safety beyond that due to an ordinary passenger in proportion to the liability to injury from the want of it." 6 Illinois Law and Practice, Carriers § 435, at 589.[5]

2. Springer v. Ford, 189 Ill. 430, 59 N.E. 953 (1910) ; O'Callaghan v. Dellwood Park Co., 242 Ill. 336, 89 N.E. 1005 (1909) ; Steiskal v. Field and Co., 238 Ill. 92, 87 N.E. 117 (1908) ; Walsh v. Cullen, 235 Ill. 91, 85 N. E. 223 (1908) ; Diamond Glue Co. v. Wietzychowski, 227 Ill. 338, 81 N.E. 392 (1907) ; Beidler v. Bradshaw, 200 Ill. 425, 65 N.E. 1086 (1903) ; Chicago Exchange Bldg. Co. v. Nelson, 197 Ill. 334, 64 N.E. 369 (1902) ; Hartford Deposit Co. v. Sollitt, 172 Ill. 222, 50 N.E. 178 (1898).

3. Mader v. Mandel Bros. Dept. Store, 314 Ill.App. 263, 41 N.E.2d 327 (1942) ; Hefferman v. Mandel Bros. Inc., 297 Ill.App. 272, 17 N.E.2d 523 (1938). See also Domany v. Otis Elevator Co., 369 F.2d 604, 614 (6th Cir. 1966).

4. Springer v. Ford, 189 Ill. 430, 434–435, 59 N.E. 953, 953–954 (1901).

5. *See also*, Burke v. Chicago & Northwestern Ry. Co., 108 Ill.App. 565 (1902), where a helpless drunk was injured by a switching train after he had been deposited on a platform between two sets of tracks. See further, 2 Restatement of Torts 2d § 314A(1), which provides:

> (1) A common carrier is under a duty to its passengers to take reasonable action
> (a) to protect them against unreasonable risk of physical harm, and
> (b) to give them first aid after it knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others.

And see finally, American President Lines, Ltd. v. Lundstrom, 323 F.2d 817 (9th Cir. 1963), where a shipowner was held liable for failure to take special precautions to assist

█ We need not decide whether under the circumstances of this case, the public wheelchair was itself a common carrier[6] or whether when a common carrier undertakes to provide wheelchair service it must exercise extraordinary care as opposed to ordinary care.[7] We need only apply the *Katamay-Zorotovich* standards and determine that Mrs. Suarez was a passenger under those standards and was entitled to the benefit of the high degree of care which Illinois affords to passengers.[8]

Inasmuch as the issues were presented to the jury under erroneous instructions of standards of care and conduct, the judgment must be reversed and the cause remanded for a new trial.[9]

### IV

Although it cannot be predicted with any certainty what evidence may be introduced at a new trial, it may be prudent to express our views on the giving of the instructions on contributory negligence. The record of the first trial does not support the giving of those instructions.

█ The district court said that "the fact that she wanted to take a trip under those conditions is evidence of contributory negligence." Mrs. Suarez' doctor advised her that she could take the trip. That the trip began "under those conditions" was not due to the wheelchair captive.

█ The court's view of the situation was something akin to assumption of risk. Under Illinois law the doctrine of assumption of risk as a defense is limited to master-servant relationships.[10] Other than taking the risk that we all take at all times that everything will go wrong, Mrs. Suarez took no affirmative action that contributed to her dilemma or to her ultimate injury. "No one is bound to anticipate the negligence of another." *Bakovich v. Peoples Gas Light & Coke Co.*, 45 Ill.App.2d 182, 195 N.E. 2d 260, 264 (1st Dist. 1963).

Reversed and remanded for a new trial.

FAIRCHILD, Circuit Judge (dissenting).

I cannot agree with the majority that the defendant was obligated, under the law of Illinois, to exercise the highest degree of care in its ticket-selling operations at O'Hare Field. However, even if the district court erred regarding the standard of care, under the circumstances that error was harmless. In addition, I believe that the record justified a contibutory negligence instruction. For these reasons, I respectfully dissent.

The majority bases its holding that the plaintiff was entitled to the highest degree of care on a determination that

---

a passenger who was recovering from a fractured hip and fell during a fire drill. "Prior to the voyage, appellee's son advised the ship's purser, assistant purser and chief steward of these facts, and they assured him that appellee would be taken care of."

6. *Cf.* Fisher v. Mt. Mansfield Co., Inc., 283 F.2d 533, (2d Cir. 1960), where a ski lift was held to be a common carrier, the operator of which was required to exercise the highest degree of care for plaintiff's safety, and negligence was found in the failure of the operator's attendant to assist plaintiff in her attempt to open the gate to get out.

7. *Cf.* Stahlin v. Hilton Hotels Corp., 484 F. 2d 580, 583 (7th Cir. 1973).

8. Demetrion v. Edwards, 416 F.2d 958 (7th Cir. 1969).

9. The district court had some question as to whether Count I, the only count submitted to the jury, sufficiently alleged the common-carrier-passenger relation. That count of the amended complaint alleged that TWA was a common carrier, that a reservation for passage had been made and that Mrs. Suarez was in the care and custody of TWA at the times in issue. TWA was adequately notified of the claim being pursued.

10. Barrett v. Fritz, 42 Ill.2d 529, 533–534, 248 N.E.2d 111, 114 (1969); Huckabee v. Bell & Howell, Inc., 102 Ill.App.2d 429, 441, 243 N.E.2d 317, 323 (1st Dist. 1969); Maytnier v. Rush, 80 Ill.App.2d 336, 347–349, 225 N.E.2d 83, 89–91 (1st Dist. 1967).

she was a passenger at the time of her injuries. However, "[t]he degree of care is not fixed solely by the relation of carriers and passengers; it is measured by the consequences which may follow the want of care." Davis v. South Side Elevated Railroad Co., 292 Ill. 378, 127 N.E. 66, 68 (1920). See also Sims v. Chicago Transit Authority, 4 Ill.2d 60, 122 N.E.2d 221, 223 (1954). In *Davis*, the court held that ordinary care was the proper standard where plaintiff slipped descending the stairs outside a train station.

The Illinois Supreme Court reaffirmed its adherence to the *Davis/Sims* rationale in Katamay v. Chicago Transit Authority, 53 Ill.2d 27, 289 N.E.2d 623, 625 (1972): "[T]he degree of care should be commensurate with the danger to which the passenger is subjected, and the degree of care required to be exercised increases as the danger increases." In *Katamay*, plaintiff, moving toward a train, suffered injuries when the heel of her shoe wedged in a gap in the wooden station platform. The court held that, in boarding, she was entitled to the highest care. Similarly, in Zorotovich v. Washington Toll Bridge Authority, 80 Wash.2d 106, 491 P.2d 1295 (1971), cited in *Katamay* for the factors defining a passenger, a vehicle proceeding down a ramp to defendant's ferry struck plaintiff as he crossed the ferry dock to purchase his ticket. The court held that he was a passenger and entitled to the highest degree of care. Both *Katamay* and *Zorotovich* are consistent with the principle that the degree of care should be commensurate with the degree of danger: The rush to board a train during a brief stop or the need to cross the path of autos loading onto a ferry involve special hazards peculiar to the operation of the respective carriers.

In the present case, the negligence plaintiff alleged arose from TWA's procedures for accepting credit cards and the claimed lack of courtesy and diligence of its ticket agents. Whatever perils there may be in employing rude or inefficient persons to meet the public, those perils are not infected with the unique hazards generated in the operation of a common carrier. The risks of delay and frustration to which plaintiff was exposed in purchasing an airline ticket were no greater than those she might have encountered in transacting business at a retail store. Thus, in the ticket-selling phase of its business, TWA had only to exercise ordinary care in the treatment of its customers.

Even if the district court incorrectly charged the jury as to the degree of care, I do not believe that reversible error occurred. The testimony conflicted regarding the events preceding plaintiff's illness. Plaintiff testified that TWA's employees were uncooperative and spoke to her in a loud and abusive fashion. Defendant's witnesses, on the other hand, stated that they dealt with plaintiff in a pleasant manner, and their testimony tended to show that they made reasonable efforts on her behalf. The jury, in reaching a verdict for defendant, apparently accepted defendant's version. It is, therefore, unlikely that the standard of care instruction had any impact on their deliberations. When the facts which the jury must have found in reaching its verdict render an erroneous instruction irrelevant, the error is harmless. See Baynum v. Chesapeake and Ohio Railway Co., 456 F.2d 658, 659–660 (6th Cir. 1972).[1]

It is, of course, possible that the jury concluded TWA had acted improperly; that the misconduct did not violate ordinary care; but that, had they been instructed under the highest care standard, they would have found a breach. I think, however, that this hypothesis is improbable. In its practical effect on jury deliberation, the difference between the two standards may be, and seeming-

---

1. Cf. Kube v. Bethlehem Steel Corp., 390 F.2d 506, 509–511 (3rd Cir., 1968) (district court's failure to give highest degree of care instruction harmless in light of record supporting jury's verdict for defendant).

ly was here, too small to justify reversal.[2] One commentator has, in fact, suggested that there is in reality but one standard of care, "ordinary prudence under the circumstances, and the greater danger, or the greater responsibility, is merely one of the circumstances . . . ." W. Prosser, Law of Torts § 34 at 184 (3rd ed. 1964). In light of these considerations, any error in the instructions was not "inconsistent with substantial justice" and was, therefore, harmless. See Rule 61, F.R.Civ.P.

Finally, I do not agree with the majority's conclusion that the record failed to support a contributory negligence instruction. Under Illinois law, plaintiff had the burden of pleading and proving the exercise of due care for her own safety. See, *e. g.*, Green v. Brown, 8 Ill. App.3d 638, 291 N.E.2d 18, 19 (1972). Whether plaintiff has established freedom from negligence is normally a jury question. *Green*, 291 N.E.2d at 19–20. The trial judge may withdraw that issue from the jury only when "all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." Pedrick v. Peoria and Eastern Railroad Co., 37 Ill.2d 494, 229 N.E.2d 504, 513–514 (1967).

The evidence in the present case did not meet this test. The district court's observation to counsel, apparently out of the jury's hearing, that "the fact that she wanted to take a trip under those conditions is evidence of contributory negligence" may not reflect a sound basis for a contributory negligence instruction. However, plaintiff did admit that her doctor had admonished her not to walk for a few days. There was testimony that, immediately prior to her collapse, plaintiff said to a TWA ground hostess: "Where is United Air Lines? I don't want to go. Take your wheelchair back." Plaintiff then suddenly rose up from the wheelchair and simultaneously suffered a heart attack. On this evidence, the jury could have concluded that plaintiff, contrary to her doctor's warnings, was attempting to walk, and that this act constituted negligence contributory to her illness. Considering the burden was plaintiff's to establish her own exercise of care, the record is not so overwhelmingly favorable to her on that issue that it precluded jury determination.

I would affirm the judgment below.

2. Cf. Lynch v. Travelers Indemnity Co., 452 F.2d 1065, 1067 (8th Cir., 1972).