FERTILIZER CORPORATION OF
INDIA, et al., Petitioners,

v.

IDI MANAGEMENT, INC., Respondent.

No. C–1–79–570.

United States District Court,
S. D. Ohio, W. D.

Jan. 11, 1982.

Gerald L. Draper, Columbus, Ohio, for petitioners.

James R. Bridgeland, Jr., L. Clifford Craig, Cincinnati, Ohio, for respondent.

## OPINION AND ORDER DENYING RESPONDENT IDI'S MOTION TO RECONSIDER

SPIEGEL, District Judge:

This matter came on for consideration of respondent's motion to reconsider, 517 F.Supp. 948 (doc. 46), petitioners' memo in opposition (doc. 49), and respondent IDI's reply (doc. 50). Respondent IDI Management, Inc.'s motion for reconsideration of the Court's Memorandum Opinion and Decision (doc. 33) is based on newly discovered evidence. That portion of the Memorandum Opinion and Decision which respondent is asking the Court to reconsider concerns IDI's third affirmative defense "public policy—arbitrator Sen's relationship with FCI" (doc. 33, pp. 9–11). IDI originally claimed that enforcement of the Nitrophosphate Award would violate the public policy of the United States, in violation of Article V(2)(b) of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, a treaty to which the United States became a party in December 1970, and which was ratified by India in 1961. The Convention is codified in Chapter 2 of Title 9 of the United States Code. The Convention provides "recognition and enforcement of an arbitral award may be refused if the competent authority in the country where recognition and enforcement

is sought finds that: ... (b) the recognition or enforcement of the award would be contrary to the public policy of that country." Convention Article V, paragraph 2.

Respondent claims that Mr. B. Sen, the arbitrator nominated by FCI had served as counsel for FCI in at least two other legal or arbitral proceedings, and that these facts were not disclosed to IDI, and that the nondisclosure of the relationship is fatal to enforcement despite the fact that the arbitration was unanimous and even though actual fraud or bias, may be incapable of proof. There is a factual dispute as to whether IDI had constructive or other notice of Mr. Sen's relationship with FCI. FCI responded that Mr. Sen was chosen properly under the ICC rules, as well as the Convention.

 In our Memorandum Opinion and Order (doc. 33) we observed that "the ICC rules applicable at the time made no mention of neutrality, and not until the 1975 ICC rules became effective was an 'independent' arbitrator required." IDI has submitted an impressive affidavit of Robert William Metcalf Thompson, a solicitor of the Supreme Court of Judicature of England and Wales, who worked in the Secretariat of the Court of Arbitration of the International Chamber of Commerce, becoming Secretary General of such Court on May 23, 1973, where he served until February 28, 1977, which affidavit was attached to IDI's reply (doc. 50). Mr. Thompson was asked for his opinion and the factual and legal basis supporting it "as to whether under the 1955 rules an arbitrator nominated by a party might be subject to disapproval or disqualification due to a prior close relationship with the party appointing him and notably due to previously acting as legal counsel to that party" (paragraph 7). Mr. Thompson concluded as follows:

8. Both under the 1955 and 1975 rules, the Court of Arbitration of the International Chamber of Commerce, the institution which administers and controls ICC arbitrations, reserved the power to disapprove or disqualify arbitrators, in its discretion, in order to preserve the integrity of ICC arbitration.

\* \* \* \* \* \*

19. It apparently has been alleged by FCI in the instant proceeding that under the 1955 rules a party-appointed arbitrator was not required to be independent and disqualification would not lie for lack of independence. Some support of this theory is sought to be found in the text of Article 2.4 of the 1975 rules which specifically provides a reference to independence, not existing in the prior rules....

20. It is true that the 1975 rules make it explicit that a party shall nominate only an 'independent' arbitrator. Furthermore, the court of arbitration, making use of the biographical data which the arbitrator nominee is to supply it with has an obligation to approve the nomination only of arbitrators who, *prima facie*, are independent of the party appointing them. Hence, under the 1975 rules, the Court has a more explicit mandate to act on its own initiative to screen party-nominated arbitrators, and to appoint only those, who from the information given to them by the arbitrator, appear to demonstrate sufficient qualities of independence.

21. However, nothing in the text of Article 2.4 of the 1975 rules, having to do with the nomination and appointment of arbitrators, and the additional burdens of the Court of Arbitration in respect thereto, removes the possibility of disqualification of an arbitrator at the instance of the other party, a provision which remains substantially the same under the 1955 rules (Article 7.4) and 1975 rules (Article 2.7). As has been pointed out above, lack of independence has been, in the ICC practice, a cause for disqualification under the 1955 rules. It continues to be so under the 1975 rules.

\* \* \* \* \* \*

26. Mr. Spiegel, District Judge, in the context of the present proceedings, has stated in his Memorandum of Opinion and Decision:

'The ICC rules applicable at the time made no mention of neutrality and not until the 1975 rules became effective was an independent arbitrator required.'

With respect to Mr. Spiegel, although I agree that the provision for independence was not *specifically* provided in the 1955 rules, in my opinion, the independence of an arbitrator has always been one of the *principal requirements* expected of an arbitrator *so much so* that prior to the 1975 ICC rules, *no specific provision was considered necessary.*

27. However, there can be absolutely no implication that the 1955 rules, by remaining silent on the question of independence, intended to permit the appointment of partial arbitrators.

28. In effect, the petitioners' maintain, and Mr. Spiegel, District Judge, has upheld, that the ICC rules applicable at the time of the present dispute made no provisions for:

1) The appointment of an independent arbitrator,

2) The obligation of disclosure by an arbitrator.

I am of the opinion that these obligations have always been a fundamental and accepted, if not codified, obligation of the parties arbitrating under the ICC rules.

This Court is persuaded by Mr. Thompson's reasoning that the ICC rules have always required that the arbitrators be impartial and/or independent, and that any information bearing on the ability of an arbitrator to be impartial and/or independent must be disclosed.

IDI's motion to reconsider is based on an affidavit of Mr. Robert Layton, a New York lawyer, who saw this Court's Memorandum Opinion and Decision and called IDI's counsel concerning it. Mr. Layton's firm represented an American company, Chemico, which was a respondent in an ICC case venued in New Delhi, India. FCI was the petitioner in that case, and during the course of the arbitration, had two arbitrators disqualified by the ICC because of their lack of independence. Mr. Sen, was nominated by FCI as an arbitrator in that case. According to Mr. Layton's affidavit (Appendix A, doc. 46), neither Mr. Sen nor petitioner ever disclosed the relationships between Mr. Sen and FCI revealed in the instant case. Yet, FCI did successfully seek the disqualification of an arbitrator nominated by the respondent in Mr. Layton's case "on the grounds that he lacked independence because other members of his law firm had represented Chemico's corporate parent in an unrelated matter. FCI also sought disqualification of another arbitrator on the grounds that he had represented Chemico's former corporate parent."

IDI contends that Mr. Layton's affidavit illustrates that FCI has attempted to mislead this Court with respect to the "independence" requirement of the ICC rules, and also shows that FCI has falsely answered the interrogatories which IDI served on it during the course of the proceedings in the instant case, in that FCI's answers expressly denied that Mr. Sen had served as an arbitrator in any other proceedings involving FCI.

FCI's response to IDI's motion for reconsideration is that FCI's failure to disclose Mr. Sen's relationship was an unintentional omission; furthermore, IDI's Indian lawyers represented the respondent (Chemico) in the other arbitration proceeding, and therefore were aware of Mr. Sen's relationship to FCI. As to IDI's contention that FCI has misrepresented to this Court the requirements for independence which the ICC Court of Arbitration imposed on arbitrators and arbitrations conducted under its rules, FCI argues that its prior memoranda do not rely solely on the difference between the 1955 and 1975 rules, but also IDI's alleged knowledge of Mr. Sen's relationship to FCI, and that such relationship was not one which destroyed independence, "and that 'independent' does not mean 'neutral' or 'free from any potential source of bias' " (doc. 49, p. 12). Additionally, FCI points out that this Court's decision did not rely on the differences in language of the rules, but on the fact that the award was unanimous and the proceedings were not so tainted as to require that the award be nullified. .

■ We have carefully reviewed again all of the material relating to the third affirmative defense of IDI, including that which has been submitted in support of and against IDI's motion for reconsideration. We are impressed with the sincerity and gravity of the charges of IDI concerning the failure to disclose Mr. Sen's relationship to FCI, which bears upon his ability to be impartial and independent. However, we are not persuaded that the evidence submitted in support of IDI's motion for reconsideration is sufficient to warrant the reversal of this Court's decision on this particular affirmative defense. We incorporate by reference our reasons for finding that the enforcement of the award should not be denied, because it does not rise to the level of being contrary to the public policy of the United States, contained on pages 11 through 13 of our original Opinion (doc. 33).

We presume IDI's motion for reconsideration is made pursuant to Rule 60(b)(2), Fed.R.Civ.P., which provides:

> On motion and upon such terms as are just, the Court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: ...
> 2) Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); ...
> 6) Any other reason justifying relief from the operation of the judgment....

The text writer in Federal Practice and Procedure, Volume 11, paragraph 2857, Wright & Miller, in discussing the application of Rule 60(b) noted:

> Equitable principles may be taken into account by a court in the exercise of its discretion under Rule 60(b). A number of cases say that discretion ordinarily should incline toward granting rather than denying relief, especially if no intervening rights have attached in reliance upon the judgment and no act or injustice will ensue. Other cases, however, urge caution in granting relief and say that a judgment should be set aside only in exceptional circumstances.

General formulations of this kind are of limited usefulness. It certainly is true that it is the policy of the law to favor a hearing of a litigant's claim on the merits. It also is true that this policy must be balanced against the desire to achieve finality in litigation.

The cases calling for great liberality in granting Rule 60(b) motions, for the most part, have involved default judgment. There is much more reason for liberality in reopening a judgment when the merits of the case never have been considered than there is when the judgment comes after full trial on the merits. On the other hand, the leading cases speaking of a requirement of exceptional or extraordinary circumstances have been cases and motions under Rule 60(b)(6). That subdivision of the rule does require a various special showing of the moving party and it does not assist sound analysis to repeat those phrases in cases brought pursuant to other portions of Rule 60(b), under which a less demanding standard applies. The cases show that although the courts have sought to accomplish justice, they have administered Rule 60(b) with a scrupulous regard for the aims of finality....

IDI has an extremely difficult burden to overcome before this Court can grant relief under Rule 60(b)(2). The evidence "must be admissible and credible, and must be of such a material and controlling nature as will probably change the outcome, not merely cumulative or tending to impeach or contradict a witness." 7 Moore's Federal Practice 273–76 § 60.23[4] (f.n. omitted). *See Baynum v. Chesapeake and Ohio Railway Company,* 456 F.2d 658 (6th Cir. 1972).

The evidentiary material submitted by IDI in support of its motion for reconsideration is both cumulative and corroborative of other assertions concerning FCI's lack of candor; it is not conclusive in light of the fact that the same counsel that represented Chemico in India also represented IDI. Our careful review of all of the facts and arguments in this matter leads to the conclusion that the paramount consideration in this

litigation should be finality where we have concluded that the public policy of the United States has not been offended.

Accordingly, respondent IDI's motion to reconsider is DENIED.

SO ORDERED.